## No. 9405.

## MUTUAL SAVINGS & BUILDING ASSOCIATION *v.* CANON BLOCK INVESTMENT COMPANY.

CONTRACT—*Construed.* The maker of a promissory note bearing interest at six per cent per annum, and "ten per cent per annum after maturity" applied in writing for one year's extension, at the rate of seven per cent per annum "payable semiannually" upon days named. His request being granted *held,* that the rate of interest after the expiration of the extension was seven per cent per annum, and this, although the application therefor contained a provision that "all conditions relating to the payment of interest not specifically modified by this application, to remain in full force, excepting that the rate of interest shall be seven per cent."

*Error to Mesa District Court, Hon. Thos. J. Black, Judge.*

Messrs. McMULLIN & STERNBERG, Mr. WILLIAM H. GAB-BERT, for plaintiff in error.

Mr. BENJAMIN GRIFFITH, for defendants in error.

Opinion by Mr. Justice Allen.

THIS is a suit brought by the Mutual Savings and Building Association against the Canon Block Investment Company and a public trustee to foreclose a deed of trust which secured a promissory note. From the allegations of the complaint it appears that the plaintiff claims that the sum of $3,667.56 is due on the principal of the note, and that there is also due interest on this sum at the rate of ten per cent. per annum from February 2, 1917. To the complaint there was interposed a defense which set forth a certain extension agreement relating to the note in question. It is further alleged in the answer that there was due on the note on February 2, 1917, the sum of $1,765.53, which sum was tendered plaintiff on that date and refused and is tendered in full satisfaction and discharge of the deed of trust and the note secured thereby. The extension agreement was recited in the answer, and is relied on by the defendant, as showing that the amount tendered by the defendant, the Canon Block Investment Company, is all to which the plaintiff is entitled as the owner of the note in question.

The plaintiff filed a demurrer to the above mentioned defense of the answer. The trial court overruled the demurrer, and the plaintiff electing not to reply to the answer but to stand on the demurrer, a judgment was rendered allowing the plaintiff the amount admitted by the defendant to be due, and also interest thereon from February 2, 1917, at the rate of seven per cent per annum. The plaintiff brings the cause here for review.

The controversy in the instant case relates entirely to the construction which is to be placed upon the extension agreement above mentioned, so far as such agreement

affected the provisions of the note concerning the rate of interest which it should bear after maturity.

The promissory note in question was executed and delivered on May 18, 1901, and contains, in part, the following language:

"On the eighteenth day of May, 1906, for value received, I promise to pay to the order of Otho S. A. Sprague, the principal sum of twenty-five thousand dollars, with interest thereon at the rate of six (6) per cent per annum from date until maturity, payable quarter yearly, * * * This note bears interest after maturity at the rate of ten (10) per cent per annum, payable quarter yearly. * * *

(Signed) Orson Adams, Jr."

The extension agreement consists of a request or application for extension, made by the maker of the note, and the granting of the extension by the holder of the note, or its agent. The agreement is evidenced by the following writings:

*"Application for Extension.*

Loan of Orson Adams, Jr., of The Colorado Title and Trust Company.

"To the Colorado Title and Trust Company,

Colorado Springs, Colorado.

Gentlemen: I, Orson Adams (formerly Orson Adams, Jr.), hereby request you to obtain an extension of one (1) year, dating from October 3rd, 1912, of a certain loan of twenty-five thousand ($25,000) dollars, evidenced by a certain promissory note executed by Orson Adams, Jr., in favor of Otho S. A. Sprague, dated May 18th, 1901, due May 18, 1906, and secured by deed of trust on lots numbered thirteen (13), fourteen (14), fifteen (15) and sixteen (16), in Block numbered one hundred and nineteen (119), in the City of Grand Junction, according to the official plat thereof filed with the Recorder of Mesa County, Colorado, together with all the improvements thereon, which deed of trust is recorded in the office of the Clerk and Recorder of

said County in Book 67, at page 405, all of which loan now remains unpaid, said deed of trust remaining in full force and effect until said indebtedness is fully paid; and I agree to pay said indebtedness of twenty-five thousand ($25,000) dollars and interest thereon from October 3, 1912, until paid, at the rate of seven per cent (7%) per annum, payable semi-annually, on the third (3rd) days of April and October of each year, and the debt at maturity.

"All conditions contained in the note and deed of trust relating to the payment of interest, taxes and insurance premiums, and the rights of the holder in case default is made in such payments, and all other conditions and covenants contained in such note and deed of trust, not especially modified by this application to remain in full force and effect, excepting that the rate of interest shall be seven per cent (7%) per annum instead of six per cent (6%) per annum as called for in said note.

(Signed) Orson Adams,

Lettie L. Adams.

"Witness:

Albert E. Baylis."

"To Orson Adams and Lettie L. Adams:

We have obtained from the holder of the above described loan authority to extend payment of the same as above requested, and such extension is here granted.

The Colorado Title & Trust Company,

By J. Arthur Connell, President.

Colorado Springs, Colorado, October 24th, 1912."

The contention of the plaintiff in error, plaintiff below, is that from the language of the extension agreement, above set forth, it must be concluded or held that the parties agreed that the rate of interest at seven per cent per annum was to be in effect, or applied, only during the one year for which the payment of the note was extended, and that thereafter, or after the maturity of the note, the same would again bear interest at the rate of ten per cent per annum. On the other hand, the contention of the defend-

ant in error, which was upheld by the trial court, is that by the extension contract the rate of interest was fixed at seven per cent per annum not only for the year of extension but also for such time after maturity as the note remained unpaid.

It is seen from the extension agreement that the date of the maturity of the note became, by that agreement, October 3, 1913. The extension was granted or made on October 24, 1912, and the period of extension was therefore a few days less than one year.

Relating to the payment of interest, the extension contract contains the following stipulation on the part of the maker of the note:

"I agree to pay said indebtedness * * * and interest thereon from October 3, 1912, until paid, at the rate of seven per cent (7%) per annum, payable semi-annually, on the third (3rd) days of April and October of each year, and the debt at maturity."

It is conceded that, if the foregoing quotation expressed the entire agreement as to the payment of interest, the words "until paid" would have the effect of making the rate of interest mentioned, to-wit, seven per cent per annum, apply and prevail both before and after maturity of the note. The authorities are to this effect. 22 Cyc. 1531.

It may be further observed, in this connection, that in the foregoing stipulation it is agreed that the interest at such rate is payable on certain days of each year." The word "each" is a distributive adjective pronoun which denotes or refers to every one of two or more persons or things, composing the whole, separately considered. Black's Law Dict. 407; 14 Cyc. 1130. The expression "each year" refers to every one of two or more years, and must therefore refer to one or more years after the maturity of the note, since the maturity would arrive at or before the expiration of the first year after the extension agreement was made.

The contention of the plaintiff in error, as above mentioned, however, is based chiefly, if not entirely, upon the concluding paragraph of the application for extension, wherein it is agreed that "all conditions contained in the note * * * relating to the payment of interest, taxes, (etc.) * * * not especially modified by this application to remain in full force and effect, excepting that the rate of interest shall be seven per cent (7%) per annum instead of six per cent (6%) per annum as called for in said note."

The paragraph thus relied on by plaintiff in error makes no express reference to the rate of interest which should prevail after maturity of the note. It does not qualify or limit any language or promise contained in the previous part of the agreement. It appears to be intended merely to preserve and retain in effect all conditions contained in the note which were not changed by the extension contract. From what has been hereinbefore said, it is seen that certain of such conditions were modified or changed. The rate of interest was fixed, by the extension agreement, at seven per cent per annum "until paid," instead of six per cent before maturity and ten per cent after maturity, as originally provided for. Again, the interest became payable "semi-annually" instead of "quarter yearly" as stipulated in the note. The foregoing statements are not rendered incorrect by the last clause in the paragraph in question, which is, "excepting that the rate of interest shall be seven per cent (7%) per annum instead of six per cent (6%) per annum as called for in said note." The language of this clause is not inconsistent with anything stated in this opinion, nor with the literal significance of the words contained elsewhere in the extension agreement. Its language is limited to the rate of interest before maturity, and it refers to no other condition of the note. It leaves unaffected the previous part of the agreement which makes the interest payable "semi-annually" instead of "quarter yearly." The clause therefore cannot mean that the only modification of the conditions of the note is that relating to

the rate of interest in effect before maturity. Its only effect is in the nature of a repetition, showing that the rate of interest before maturity was changed from six to seven per cent per annum. It does not qualify or explain the agreement to pay interest at the rate of seven per cent per annum "until paid," and it does not in any manner affect or change the usual and ordinary meaning of the words "until paid," hereinbefore discussed.

"Construing the contract by reference to all its parts and provisions, as well as in the light of other rules of construction, we are of the opinion that the principal of the note, after the making of the extension contract, bore interest at the rate of seven per cent per annum both before and after maturity. The contention of the plaintiff in error, to the contrary, cannot be sustained, and the judgment is, therefore, affirmed.

Affirmed.

Chief Justice Garrigues and Mr. Justice Bailey concur.