541 So.2d 728 (1989)
NCNB NATIONAL BANK OF FLORIDA, Appellant,
v.
FLORIDA INSURANCE GUARANTY ASSOCIATION, Appellee.
No. 88-1295.
District Court of Appeal of Florida, First District.
April 6, 1989.
*729 Barry Richard, of Roberts, Baggett, LaFace & Richard, Tallahassee, for appellant.
John K. Aurell and Robert L. Hinkle, of Aurell, Fons, Radey & Hinkle, Tallahassee, for appellee.
WIGGINTON, Judge.
Appellants appeal and appellees cross appeal an amended final judgment in which the trial court found that, pursuant to chapter 631, Florida Statutes, NCNB National Bank of Florida (NCNB) may recover assigned unearned premiums on numerous insurance policies from Florida Insurance Guaranty Association (FIGA), but that NCNB's "claim" is a single claim subject to a statutory cap of $300,000. We affirm in part, reverse in part, and remand.
The controversy arose from the following facts: Financial Premium Services (FPS), a wholly owned subsidiary of Universal Casualty Insurance Company (Universal), was in the business of financing premiums for the policyholders of Universal. The finance agreements included assignment to FPS of the insureds' rights to recover unearned premiums under chapter 631, Florida Statutes. NCNB entered into a revolving credit agreement with FPS in August 1983 to advance up to five million dollars to FPS. To secure the loan, NCNB took as collateral an assignment of an interest in all accounts receivable of FPS and all of the then existing future finance agreements and rights attached thereto, including the assigned rights to collect any unearned premiums.
On September 28, 1984, Universal was declared insolvent by court order. Shortly thereafter, FPS was also declared insolvent. Effective November 12, 1984, all of Universal's policies were cancelled. FPS defaulted on its note to NCNB on November 30, 1984. FPS continued to receive payments on its contracts with some insureds until at least December 1984.
Based upon its assignment of rights from FPS, NCNB demanded payment of unearned premiums from FIGA pursuant to chapter 631, which provides for the payment of claims for loss and the reimbursement to insureds of unearned premiums on behalf of insolvent insurance companies. FIGA denied coverage and filed a complaint for declaratory judgment to test the validity of NCNB's claims. NCNB filed a counterclaim seeking recovery of unearned premiums on numerous policies in the aggregate amount of $3,911,886.84. Thereupon, FIGA dropped its action and the matter proceeded to non-jury trial on the counterclaim.
At trial, NCNB presented the testimony of Roger Infante, a CPA who qualified as *730 an expert witness, in an effort to prove the amount of assigned unearned premiums owed by Universal in the aggregate to all insureds who had financed through FPS and whose rights to collect from FIGA had been assigned to NCNB. Infante testified that NCNB complied with the procedures outlined by FIGA for filing a multiple "claim" for reimbursement for unearned premiums on numerous (apparently approximately 16,000) different policies. He stated that NCNB provided FIGA with the information requested, which included figures showing the unpaid balances of the premium finance contracts, and that the standard operating procedure is that FIGA takes responsibility for calculating the amount of unearned premiums due each insured once it is given the relevant information. Infante's explanation in this regard was unrefuted by FIGA.
Infante testified at length as to his own calculations of the aggregate unearned assigned premiums outstanding which he found could range from a minimum of three million dollars to a maximum of over five million dollars, depending upon certain factors. He identified the various documents and explained the calculations, upon which he relied, which included a computer printout to which FIGA objected and which was not admitted into evidence. However, he certified that he relied upon those documents in accordance with general accounting principles and standards and he used a statistically recommended method of sampling to test their accuracy. We find his testimony in that regard was competent and admissible pursuant to sections 90.703 and 90.704, Florida Statutes. He further explained that he did not have access to certain necessary information which would enable him to calculate the assigned balances with complete accuracy. He admitted errors in his calculations due to his incomplete information but stated that he had figured in a 25 percent error factor to account for any possible errors. FIGA did not refute his figures, except to point out the error factor.
NCNB vice-president Strader testified that the outstanding balance of NCNB's loan as of the date of trial, including interest which had accrued since November 12, 1984, was approximately 2.4 million dollars. He stated that excluding the above-mentioned interest and excluding an amount recovered by NCNB from Universal and FPS's owners, the outstanding balance of the loan as of November 12, 1984, was approximately $1,835,828.
In the final judgment, the trial court found that Infante's testimony was highly credible and that NCNB's claim was a "covered claim" within the meaning of that term in chapter 631, Florida Statutes. In response to FIGA's argument that it could not be strapped with interest on the loan to FPS because of the wording of section 631.57(1)(b), which provides that "in no event shall the Association be liable for any penalties or interest," the court determined that the statute referred to interest on judgments against FIGA and "accordingly interest shall not run on this judgment." The court went on to note: the interest discussed at trial was the interest on the loan from NCNB to FPS which was secured by the unearned premiums; the unearned premiums were returnable to FPS in an amount of up to at least three million dollars; and FPS had the right to assign them as collateral to pay its debts, including interest. Thereupon, he awarded NCNB $2,582,308.93.
FIGA moved to alter or amend the judgment to deny NCNB's claim or alternatively to eliminate the award of prejudgment interest. At the hearing on that motion, FIGA raised an additional issue for the first time, arguing that the 631.57(1) cap of $300,000 on the amount that may be awarded on a single claim applies in this case. NCNB objected to the raising of that issue for the first time on rehearing and also responded that its suit was not brought on the basis of one "claim" but involved numerous insureds and unearned premiums each of which were well under the $300,000 cap. NCNB also requested the opportunity to submit evidence to show that its claim was not a single claim but actually constituted multiple claims. However, in the amended final judgment, the trial judge found that 631.57(1)(a) limits NCNB's recovery *731 to less than $300,000 and thereupon, without granting NCNB's request, he reduced NCNB's award to $299,900. Despite the fact that, at the motion hearing, the parties agreed and the judge conceded that he had erred in not awarding post-judgment interest, the judge failed to correct the amended final judgment to make such an award.
We find that the trial judge erred in applying the 631.57(1) $300,000 cap to NCNB's claim in this case as its claim clearly was in actuality multiple claims arising from multiple policies. He further erred in failing to award post-judgment interest which clearly is not prohibited by the provisions of 631.57(1)(b). Carballo v. Warren Manufacturing Company, 407 So.2d 603 (Fla. 1st DCA 1981); Trivoli Amusement Company v. Rodriguez, 413 So.2d 163 (Fla. 1st DCA 1982).
Since we reverse the application of the statutory cap to NCNB's award, it is necessary to address the question of the appropriate amount of damages to be awarded. In the original final judgment, the trial judge awarded approximately 2.5 million dollars which, according to all the evidence in the record in this respect, especially Strader's testimony, included interest which had accrued since November 12, 1984. We find that 631.57(1)(b) does preclude the award of interest (upon claims against FIGA) which has accrued from the time the claim arose until entry of judgment. Therefore, we agree with FIGA's alternate argument that the appropriate award to NCNB is the outstanding balance of the loan as of November 12, 1984. From the record, and from FIGA's representations in oral argument, that amount appears to be $1,835,828.[1] However, we remand to the trial court for determination of the exact appropriate dollar figure.
We have considered the parties' remaining arguments and find them to be without merit.
AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.
WENTWORTH and THOMPSON, JJ., concur.
NOTES
[1] We reject FIGA's primary argument that NCNB failed to carry its burden to prove that the outstanding loan balance was fully covered by the outstanding assigned premiums. Infante's testimony in this regard was competent and, more importantly, it was unrefuted. We do not have before us the question of what amount, if any, of the unearned premiums generated by Universal's insolvency may have accrued only to the individual insureds due to the fact that their outstanding balances with FPS were less than the unearned premiums on their policies at the time Universal became insolvent. Therefore, we do not address that issue and limit our holding only to the award to NCNB of its interest, as a result of its validly held assignments, in the total amount of unearned premiums collectable under chapter 631 due to Universal's insolvency.