Katie Jean OGLESBY, Individually as Surviving Widow, and as Administratrix of the Estate of James Alford Oglesby, Jr., Deceased, et al., Plaintiffs,

v.

LIBERTY MUTUAL INSURANCE COMPANY and Oklahoma Property & Casualty Insurance Guaranty Association, Defendants.

No. 77745.

Supreme Court of Oklahoma.

May 5, 1992.

As Corrected May 29, 1992.

Kristi A. Post, New Orleans, for plaintiffs.

John G. Gomila, Jr., Alexander H. Plache, New Orleans, for defendant Liberty Mut. Ins. Co.

Larry Derryberry, Robert N. Naifeh, Jr., Oklahoma City, William E. Wright, Jr., Judy L. Burnthorn, Gary J. Giepert, New Orleans, for defendant Okl. Property and Cas. Ins. Guar. Ass'n.

KAUGER, Justice.

Four issues are presented by the questions certified.[1] We find that: 1) Pursuant

---

**1.** The District Court actually certified six questions, but because some of them were redundant, we have consolidated the query. *Centric Corp. v. Morrison–Knudsen Co.,* 731 P.2d 411–12 (Okla.1986). The questions certified were:

1. Are the plaintiffs entitled to a statutory cap of $150,000 each from the Oklahoma Property & Casualty Insurance Guaranty Association or are the plaintiffs' damages aggregated and thereby limited to a single $150,000 statutory cap (with due consideration to the applicability *vel non* of the 1986 amendment to Title 36, Oklahoma Statues (sic), Section 2007(A)(1))?

to 36 O.S.Supp.1985 § 2007,[2] parties whose claims arise from a single occurrence may be entitled to recover the $150,000.00 statutory limitation under the Oklahoma Property and Casualty Insurance Guaranty Association Act (Oklahoma Guaranty Act), 36 O.S.1981 § 2001 et seq. 2) Pursuant to 36 O.S.1981 § 2004,[3] a claimant may be enti-

2. Are legal interest and court costs recoverable from the Oklahoma Property & Casualty Insurance Guaranty Association? If so, are legal interest and court costs subject to the statutory cap or in addition thereto?

3. a. Are the plaintiffs required to exhaust the amounts recoverable from Liberty Mutual Insurance Company which are attributable to the fault, if any of its insured, Permian Engineering & Manufacturing Corporation, before recovering from the Oklahoma Property & Casualty Insurance Guaranty Association?

b. If Cooper Manufacturing Company is found to be an additional insured under the Liberty Mutual Insurance Company policy, are the plaintiffs required to exhaust all amounts recoverable from Liberty Mutual Insurance Company attributable to the fault, if any, of Cooper Manufacturing Company before recovering from the Oklahoma Property & Casualty Insurance Guaranty Association?

4. a. Are the plaintiffs required to exhaust all workers' compensation payments received from Pacific Marine Insurance Company and/or the Louisiana Insurance Guaranty Association before recovering from the Oklahoma Property & Casualty Insurance Guaranty Association?

b. If so, what does Title 36, Oklahoma Statutes Section 2012 require with respect to future workers' compensation payments?

5. a. Is the Oklahoma Property & Casualty Insurance Guaranty Association entitled to a reduction or credit for amounts recoverable by plaintiffs from Liberty Mutual Insurance Company attributable to the fault if any, of its insured, Permian Engineering & Manufacturing Corporation?

b. If Cooper Manufacturing Company is found to be an additional insured under the Liberty Mutual Insurance Company policy, is the Oklahoma Property & Casualty Insurance Guaranty Association entitled to a reduction or credit for amounts recoverable by plaintiffs from Liberty Mutual Insurance Company attributable to the fault, if any, of Cooper Manufacturing Company?

6. Is the Oklahoma Property & Casualty Insurance Guaranty Association entitled to a reduction or credit for workers' compensation payments received by plaintiffs from Pacific Marine Insurance Company and/or the Louisiana Insurance Guaranty Association?

**2.** Title 36 O.S.Supp.1985 § 2007 provides in pertinent part:

"A. The Association shall:

1. Be obligated to the extent of the covered claims existing prior to the determination of insolvency if the claims arise within thirty (30) days after the determination of insolvency, or before the policy expiration date if less than thirty (30) days after the determination, or before the insured replaces the policy or causes its cancellation, if he does so within thirty (30) days of the determination, but such obligations shall include the amount of each covered claim which is less than One Hundred Fifty Thousand Dollars ($150,000.00), except that the Association shall pay the full amount of a workers' compensation policy. In no event shall the Association be obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises ..."

Section 2007 was amended effective November 1, 1988 and now provides in pertinent part:

"A. The Association shall:

1. Be obligated to pay the covered claims existing prior to the determination of insolvency if the claims arise within thirty (30) days after the determination of insolvency, or before the policy expiration date is less than thirty (30) days after the determination, or before the insured replaces the policy or causes its cancellation, if he does so within thirty (30) days of the determination. Such obligation shall be satisfied by paying to the claimant an amount as follows:

a. the full amount of a covered claim for benefits under a workers' compensation insurance coverage,

b. an amount not exceeding Ten Thousand Dollars ($10,000.00) per policy for a covered claim for the return of unearned premium, and

c. an amount not exceeding One Hundred Fifty Thousand Dollars ($150,000.00) per claimant for all other covered claims.

In no event shall the Association be obligated to pay a claimant an amount in excess of the obligation of the insolvent insurer under the policy or coverage from which the claim arises or in excess of the limits of the Association's obligation existing on the date on which the order of liquidation is filed with the court clerk ..."

Because we find that each of the Oglesby's may be entitled to recover up to the statutory maximum of $150,000.00, we need not deal with the language appearing in the November 1, 1988 amendment, providing a statutory maximum of $150,000.00 per claimant for all covered claims. See, *Welch v. Armer*, 776 P.2d 847, 850 (Okla.1989).

**3.** Title 36 O.S.1981 § 2004 provides in pertinent part:

"As used in this act:

... 3. 'Covered claim' means an unpaid claim of an insured or third party liability claimant

tled to pre-judgment interest and costs incurred after the determination of insolvency of its insurer. The recovery of pre-judgment interest may not exceed the $150,000.00 statutory cap imposed by 36 O.S.Supp.1985 § 2007. 3) Pursuant to 36 O.S.1981 § 2012(A),[4] a claimant must exhaust all other covered claims he/she might have against an insurer, under an insurance policy, before recovering from the Oklahoma Guaranty Association. Any amount payable under the Oklahoma Guaranty Act is reduced by the amount recovered. And 4) Pursuant to 36 O.S.1981 § 2012(B),[5] any recovery received for workers' compensation benefits under the Oklahoma Guaranty Act must be reduced by the amount of the recovery from any other insurance guaranty association.

## FACTS

James Alford Oglesby, Jr. (husband/father/employee), a Louisiana resident, worked for Grosse Tete Well Service (Well Service). On November 7, 1985, he was fatally injured when the hydraulic system of a mobile work rig failed. Pacific Marine Insurance (Pacific Marine) provided the Well Service's workers' compensation coverage. Pacific Marine was declared insolvent on July 7, 1989, and the Louisiana

Insurance Guaranty Association began making workers' compensation payments to the plaintiffs, Katie Jean Oglesby (wife/mother), and Janice Renee Oglesby and James Alford Oglesby, III (children) (collectively, Oglesby).

On August 4, 1986, the mother filed a complaint on behalf of herself, the estate, and her two children in the United States District Court of the Eastern District of Louisiana. Oglesby alleged that Permian Engineering and Manufacturing Corporation (Permian Engineering) and Cooper Manufacturing Corporation (Cooper Manufacturing), an Oklahoma corporation, negligently manufactured the mobile work rig on which the employee was killed. Oglesby later named as defendants, Liberty Mutual Company (Liberty Mutual) and Allied Fidelity Insurance Company (Allied Insurance). Allied Insurance is Cooper Manufacturing's insurer. Liberty Mutual provides coverage to Permian Engineering. After the instant cause was filed, Permian Engineering and Cooper Manufacturing filed for bankruptcy and were dismissed from the cause. On March 28, 1986, Allied Insurance filed a petition for liquidation. The order of liquidation was signed on July 15, 1986. Because Cooper Manufacturing is an Oklahoma corporation, the Oklahoma Guaranty Association was added as a de-

... which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this act applies issued by an insurer ... 'Covered claim' shall not include supplementary payment obligations including, but not limited to, adjustment fees and expenses, attorneys' fees and expenses, court costs, interest and bond premiums incurred prior to the determination that an insurer is an insolvent insurer under this act ..."

Section 2004 was amended effective November 1, 1988. However, the quoted language remains unchanged by the amendment.

4. Title 36 O.S.1981 § 2012(A) provides in pertinent part:

"A. Any person having a claim against an insurer under any provision of an insurance policy other than a policy of the insolvent insurer which is also a covered claim shall be required to first exhaust his rights under such policy. Any amount payable on a covered claim under this act shall be reduced by the

amount of any recovery under such other insurance policy...."

Section 2012 was amended in 1986. The quoted portion of § 2012 remained unaltered in the amendment and a sentence was added exempting uninsured motorist coverage.

5. Title 36 O.S.1981 § 2012(B) provides in pertinent part:

"Any person having a claim which may be recovered under more than one insurance guaranty association or its equivalent in another state shall seek recovery first from the association of the place of residence of the insured.... if it is a workers' compensation claim, he shall seek recovery first from the Association of the residence of the claimant. Any recovery under the act shall be reduced by the amount of recovery from any other insurance guaranty association or its equivalent."

Section 2012 was amended effective November 1, 1986. However, the quoted language remains unchanged.

fendant. Allied Insurance was dismissed. Liberty Mutual and the Oklahoma Guaranty Association are the only remaining party-defendants.[6]

Oglesby filed a motion for summary judgment requesting that the trial court interpret the Oklahoma Guaranty Act to determine: 1) whether the mother and the children are entitled to receive $150,000.00 each from the Oklahoma Guaranty Association or whether the three claims are aggregated and limited to a total recovery of $150,000.00; 2) whether Oglesby must exhaust insurance recovery from Liberty Mutual and workers' compensation benefits before seeking recovery from the Oklahoma Guaranty Association; and 3) whether the Oklahoma Guaranty Association is entitled to a credit against its liability for any amounts Oglesby recovers from Liberty Mutual or in workers' compensation benefits. Finding no Oklahoma precedent to resolve the questions of law concerning the Oklahoma Guaranty Act, the trial court certified six questions to this Court pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1981 § 1601 et seq.

---

**6.** Pacific Marine and the Louisiana Guaranty Association filed a petition of intervention to recover the workers' compensation benefits paid to Oglesby from any potential tort award. The Oklahoma Guaranty Association, Cooper Manufacturing, and Allied Insurance filed cross-claims naming Liberty Mutual and alleging that Cooper Manufacturing is an additional insured under the policy issued to Permian Engineering.

**7.** *Welch v. Armer,* see note 2 at 849, supra; Title 36 O.S.1981 § 2002 provides:

"The purpose of this act is to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment, to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers."

See also, P. Roberts, "Insurance Company Insolvencies & Insurance Guaranty Funds: A Look at the Nonduplication of Recovery Clause," 74 Iowa L.Rev. 927–28 (1989).

**8.** Title 36 O.S.Supp.1985 § 2007 provides in pertinent part:

## I.

PURSUANT TO 36 O.S.SUPP.1985 § 2007, PARTIES WHOSE CLAIMS ARISE FROM A SINGLE OCCURRENCE EACH MAY BE ENTITLED TO RECOVER THE $150,000.00 STATUTORY LIMITATION UNDER THE OKLAHOMA PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION ACT, 36 O.S.1981 § 2001 et seq.

Oglesby asserts that she and each of her two children have a covered claim within the meaning of 36 O.S.Supp.1985 § 2007 entitling them to a combined recovery of $450,000.00. The Oklahoma Guaranty Association contends that all three claims are aggregated and constitute a single covered claim subject to one $150,000.00 recovery.

The Oklahoma Guaranty Association was established by statute to protect claimants and policyholders from financial losses associated with the insolvency of an insurance company.[7] The funds necessary for the satisfaction of claims arising from the insolvency of an insurer are obtained by proportionate assessments against member insurers.[8] The liability of the Oklahoma Guaranty Association is statutorily limited

---

"A. The Association shall:
... 3. Allocate claims paid and expenses incurred among the three accounts set out in Section 2005 of this title separately, and assess member insurers separately for each account amounts necessary to pay the obligations of the Association under this section subsequent to a member insurer becoming an insolvent insurer ... The assessments of each member insurer shall be in the proportion that the net direct written premiums of the member insurer for the calendar year preceding the assessment on the kinds of insurance in the account bear to the net direct written premiums of all participating insurers for the calendar year preceding the assessment on the kinds of insurance in the account.... No member insurer may be assessed in any year an amount greater than two percent (2%) of the net direct written premiums of that member for the calendar year preceding the assessment on the kinds of insurance in the account or one percent (1%) of that member insurer's surplus as regards policyholders, whichever is less...."

Section 2007 was amended effective November 1, 1988. However, the quoted portion of the statute remains unchanged in the amendment.

to the payment of covered claims. Pursuant to 36 O.S.1981 § 2004, a covered claim is an unpaid claim of an insured or a third party liability claimant arising from and within the coverage of a policy issued by an insolvent insurer.[9] Except in the case of a workers' compensation claim, 36 O.S.Supp. 1985 § 2007 provides that payments for covered claims are limited to the lesser of $150,000.00 or the coverage afforded in the insolvent insurer's policy.[10]

The issue of whether the Oklahoma Guaranty Association is obligated to pay up to the statutory maximum of $150,-000.00 to each individual beneficiary upon the insolvency of an insurer in a wrongful death action is one of first impression in Oklahoma. The jurisdictions which have decided the issue are divided.[11] Those courts recognizing that each beneficiary has a claim under the guaranty acts note that the statutes refer to covered claims rather than to covered occurrences.[12] They find that failure to allow each injured party to recover would largely defeat the remedial purpose of the guaranty laws.[13] The Courts holding that there is only one covered claim equate the statutory language to insurance principles and find that there is only one injury.[14]

The determination of legislative intent controls judicial statutory construction.[15] Legislative intent is determined

---

**9.** Title 36 O.S.1981 § 2004, see note 3, supra.

**10.** Title 36 O.S.Supp.1985 § 2007, see note 2, supra.

**11.** Four jurisdictions find that the claims are separate: *Ramage v. Alabama Ins. Guar. Ass'n,* 919 F.2d 1010, 1012 (5th Cir.1991) (Applying Alabama law.) (Personal injury and wrongful death action were two claims. The guaranty statute does not restrict the amount recoverable for claims arising from one occurrence, but imposes that limit per claim.); *McMahon v. Caravan Refrigerated Cargo, Inc.,* 406 Pa.Super. 303, 594 A.2d 349, 351 (1991) (Wife's recovery for loss of consortium is separate and distinct from injuries of husband's injury in traffic accident.); *Connecticut Ins. Guar. Ass'n v. Union Carbide Corp.,* 217 Conn. 371, 585 A.2d 1216, 1222 (1991) (Single occurrence language of insurance policy does not limit multiple claims under guaranty association statute to one aggregated recovery for a covered claim.); *Cooper v. Huddy,* 581 So.2d 723, 726 (La.Ct.App.1991) (Wife and minor children each had a covered claim within the meaning of the guaranty statute and were entitled to the per claim basis of recovery.). See also, *Guaranty Bank & Trust Co. v. Ideal Mut. Ins. Co.,* 526 So.2d 1094, 1100 (La.1988) (Each claim for payment of defaulted loans submitted by lender to which indemnity bond issued resulted in separate covered claim under indemnity bond.).

Four jurisdictions find that the claims are aggregated: *Florida Ins. Guar. Ass'n,* 573 So.2d 868, 870 (Fla.Dist.Ct.App.1990) (Covered claim language refers to person injured not to the survivors.); *Knipp v. Arizona Property & Casualty Ins. Guar. Fund,* 156 Ariz. 137, 750 P.2d 895, 897 (Ct.App.1987) (Multiple beneficiaries of individual killed in an airplane accident constituted one covered claim under guaranty fund statute.); *Fontenot v. Haight,* 764 P.2d 378, 380 (Colo.Ct.App.1988) (Only one covered claim arose from an accident as per insurance policy.); *Vickodil v. Pennsylvania Ins. Guar. Ass'n,* 356 Pa.Super. 325, 514 A.2d 635, 638 (1986), *alloc. denied,* 514 Pa. 639, 523 A.2d 346 (1987) (Language of insurance policy would define covered claim.).

**12.** *Ramage v. Alabama Ins. Guar. Ass'n,* see note 11, supra; *Connecticut Ins. Guar. Ass'n v. Union Carbide Corp.,* see note 11, supra. Except for the inclusion of a deductible, the Connecticut and Alabama statutes are substantially similar to 36 O.S.Supp.1985 § 2007, see note 2, supra. Ala.Code § 27–42–8 (1975) provides in pertinent part:

"(a) The association shall

(1) Be obligated to the extent of the covered claims ... but such obligation shall include only that amount of each covered claim which is in excess of $100.00 and is less than $150,000.00, except that the association shall pay the full amount of any covered employee benefit claim arising under Section A of workmen's compensation policy...."

Conn.Gen.Stat. § 38–278 (1981) provides in pertinent part:

"(1) Said association shall: (a) Be obligated to the extent of the covered claims ... provided such obligation shall be limited as follows: ... (ii) ... such obligation shall include only that amount of each such claim which is in excess of one hundred dollars and is less than three hundred thousand dollars, except that said association shall pay the full amount of any such claim arising out of a workers' compensation policy ..."

**13.** *Connecticut Ins. Guar. Ass'n v. Union Carbide Corp.,* see note 11, supra.

**14.** *Florida Ins. Guar. Ass'n,* see note 11, supra; *Vickodil v. Pennsylvania Ins. Guar. Ass'n,* see note 11, 514 A.2d at 637.

**15.** *Fuller v. Odom,* 741 P.2d 449, 452 (Okla.1987); *Matter of Phillips Petroleum Co.,*

from the language of the statute in light of its general purpose and object.[16] We presume that the Legislature intends what it expresses in a statute.[17] Except when a contrary intention plainly appears, the words used are given their ordinary and common definitions.[18] In determining whether the Oglesbys are entitled to a single or to multiple recoveries, we must construe the language of § 2007 which provides that the obligation of the Guaranty Association includes the amount of *each covered claim* which is less than $150,-000.00.[19]

■ The word "each" is generally defined to mean any one of a number, separately considered.[20] It is a distributive adjective pronoun denoting or referring to every one of two or more persons or things, composing the whole, separately considered.[21] The Legislature's use of the word "each" rather than "all" covered claims indicates that it anticipated the possibility of multiple recoveries. Additionally, § 2007 does not use the word "occur-

rence". It expressly applies the $150,-000.00 limit to "claims". There is no basis for substituting the word "occurrence" for "claim" in order to aggregate multiple claims arising from a single accident.[22]

The plain meaning of the text of § 2007 does not support aggregation of multiple claims. A finding that only one claim may arise out of a single occurrence would largely defeat the remedial purpose of the Oklahoma Guaranty Association Act—to protect claimants and policyholders from financial losses associated with the insolvency of an insurance company.[23] Recovery against losses resulting from the insolvency of insurance carriers, which the Legislature intended to provide, would often prove illusory.[24] Both the language of § 2007 and the Legislature's expressed intent align us with those courts holding that multiple claims may arise from a single occurrence.[25] We find that each of the three Oglesby claimants may be entitled to recover up to § 2007's statutory limit of $150,000.00.[26]

652 P.2d 283, 285 (Okla.1982); *Becknell v. State Indus. Court*, 512 P.2d 1180, 1183 (Okla.1973).

**16.** *Ledbetter v. Alcoholic Beverage Laws Enforcement*, 764 P.2d 172, 179 (Okla.1988); *Humphrey v. Denney*, 757 P.2d 833, 835 (Okla.1988); *Hess v. Excise Bd.*, 698 P.2d 930, 932 (Okla.1985).

**17.** *Fuller v. Odom*, see note 15 at 453, supra; *Darnell v. Chrysler Corp.*, 687 P.2d 132, 134 (Okla.1984); *Independent School Dist. No. 89 v. Oklahoma Fed'n of Teachers*, 612 P.2d 719, 723 (Okla.1980).

**18.** *Matter of Income Tax Protest of Ashland Exploration, Inc.*, 751 P.2d 1070, 1073 (Okla.1988); *Hess v. Excise Bd.*, 698 P.2d 930, 932 (Okla.1985).

**19.** Title 36 O.S.Supp.1985 § 2007, see note 2, supra.

**20.** *State v. Kundert*, 4 Wis.2d 392, 90 N.W.2d 628, 630 (1958); *Reich v. Dietz School Dist. No. 16*, 79 N.D. 261, 55 N.W.2d 638, 641 (1952); *Sherley v. Johnson*, 38 So.2d 121 (Fla.1948); *McLaughlin v. McLaughlin*, 89 A. 520–21 (N.J.Ch.1914).

**21.** *Mutual Sav. & Bldg. Ass'n v. Canon Block Inv. Co.*, 67 Colo. 75, 185 P. 649, 650 (1919).

**22.** *Connecticut Ins. Guar. Ass'n v. Union Carbide Corp.*, see note 11, 585 A.2d at 1222, supra.

**23.** *Welch v. Armer*, see note 2, supra; Title 36 O.S.1981 § 2002, see note 7, supra.

**24.** *Connecticut Ins. Guar. Ass'n v. Union Carbide Corp.*, see note 11, 585 A.2d at 1223, supra.

**25.** *Ramage v. Alabama Ins. Guar. Ass'n*, see note 11, supra; *McMahon v. Caravan Refrigerated Cargo, Inc.*, see note 11, supra; *Connecticut Ins. Guar. Ass'n v. Union Carbide Corp.*, see note 11, supra; *Cooper v. Huddy*, see note 11, supra. See also, *Guaranty Bank & Trust Co. v. Ideal Mut. Ins. Co.*, note 11, supra.

**26.** We note, as did the courts in *Ramage v. Alabama Ins. Guar. Ass'n*, see note 11, supra, and *Connecticut Ins. Guar. Ass'n v. Union Carbide Corp.*, see note 11, supra, that the liability of the Oklahoma Guaranty Fund may be further limited by the language of the insurance policy, 36 O.S.Supp.1985 § 2007, see note 2, supra. Although we leave construction of the insurance contract to the trial court, we note that the limits of liability in the Allied policy for bodily injury and property damage liability are $500,-000 for each occurrence and $500,000 in the aggregate. The Liberty Mutual policy contains coverage for bodily injury and property damage liability for $1,000,000 per occurrence and $1,000,000 in the aggregate. If each of the Oglesby claimants is allowed to recover the statutory allowance, the combined award will be $450,000.00.

The finding that each individual claimant may be entitled to recover under the Oklahoma Guaranty Act is supported by our prior jurisprudence. In *Independent School Dist. I-29 v. Crawford*, 688 P.2d 1291, 1294 (Okla.1984), we determined that the parents of an injured child and the child each were separate claimants entitled to the statutory maximum recovery under the Political Subdivision Tort Claims Act (Tort Claims Act), 51 O.S.Supp.1979 § 151 et seq. When *Crawford* was decided, the term "claimant" was not defined as a part of the Tort Claims Act. Under the Governmental Tort Claims Act, 51 O.S.Supp.1985 § 151 et seq., claimant is now defined to require that claims be aggregated.[27] We presume that the Legislature is aware of our extant judicial construction of statutes.[28] Had the Legislature intended that the claims of claimants be aggregated under the Oklahoma Guaranty Act, it could have amended § 2007 to so provide.

## II.

## PURSUANT TO 36 O.S.1981 § 2004, A CLAIMANT MAY BE ENTITLED TO PRE-JUDGMENT INTEREST AND COSTS INCURRED AFTER THE DETERMINATION OF INSOLVENCY OF ITS INSURER. THE RECOVERY OF PRE-JUDGMENT INTEREST MAY NOT EXCEED THE $150,000.00 STATUTORY CAP IMPOSED BY 36 O.S.SUPP. 1985 § 2007.

Oglesby contends that pursuant to 36 O.S.1981 § 2004[29] interest and costs incurred after an insurer becomes insolvent are recoverable as damages and that the recovery is in addition to the Act's $150,000.00 cap. The Oklahoma Guaranty Association concedes that post-judgment interest and costs, incurred after the determination of insolvency, may be awarded pursuant to § 2004 if coverage is contained in the insolvent insurer's policy[30] and that the award is in excess of the $150,000.00 limit.[31] However, the Oklahoma Guaranty Association asserts that pre-judgment interest may not be awarded under § 2004. We are not fully persuaded by either of the parties' arguments.

The only reference to interest or costs in the Oklahoma Guaranty Act is found in § 2004. It provides in pertinent part:

> c. in the case of death, an administrator, special administrator or a personal representative who shall aggregate in his claim all losses of all persons which are derivative of the death...."

**27.** Title 51 O.S.Supp.1991 § 152 provides in pertinent part:

> "As used in this act, Section 151 et seq. of this title:
> ... 4. 'Claimant' means the person or his authorized representative who files notice of a claim in accordance with this act. Only the following persons and no others may be claimants:
> a. any person holding an interest in real or personal property which suffers a loss, provided that the claim of said person shall be aggregated with claims of all other persons holding an interest in the property and the claims of all other persons holding an interest in the property and the claims of all other persons which are derivative of the loss, and that multiple claimants shall be considered a single claimant,
> b. the individual actually involved in the accident or occurrence who suffers a loss, provided that he shall aggregate in his claim the losses of all other persons which are derivative of his loss, or

**28.** *Lekan v. P & L Protection Co.*, 609 P.2d 1289, 1292 (Okla.1980); *Garrison v. State*, 420 P.2d 474, 477 (Okla.1966).

**29.** Title 36 O.S.1981 § 2004, see note 3, supra.

**30.** The Oklahoma Guaranty Association also argues that neither the Allied nor the Liberty policies cover interest and costs. The liability of the Oklahoma Guaranty Fund may be limited by the language of an underlying insurance policy, 36 O.S.Supp.1985 § 2007, see note 2, supra. Questions concerning construction of the insurance contracts were not certified to this Court.

**31.** We do not reach this issue. But see, *Ramage v. Alabama Ins. Guar. Ass'n*, see note 11 at 1014; *Morgan v. Allstate Ins. Co.*, 577 So.2d 225 (La.Ct. App.1991).

"... 'Covered claim' shall not include supplementary payment obligations including, but not limited to, adjustment fees and expenses, attorneys' fees and expenses, court costs, interest and bond premiums incurred prior to the determination that an insurer is an insolvent insurer under this act ..."

Although some courts have found that pre-judgment interest may not be awarded against a guaranty association,[32] section 2004 does not differentiate between pre- and post-judgment interest. The only distinguishing factor mentioned in § 2007 in relation to interest concerns the date the insurer becomes insolvent. We may not read an exception into a statute not made by the Legislature.[33] We find that a claimant may be entitled to pre-judgment interest incurred after the determination of insolvency, if coverage is contained in the insolvent insurer's policy.[34]

■ Pursuant to § 2007, the Oklahoma Guaranty Association's liability is confined to the payment of covered claims. Except in workers' compensation cases, the obligation is limited to the lesser of $150,-000.00 or the coverage provided in the insolvent insurer's policy.[35] Although the Oklahoma Guaranty Association may be assessed pre-judgment interest and costs accruing after the insolvency of an insurance company, its liability may not exceed § 2007's statutorily imposed limits. The Oglesby's may recover pre-judgment interest only to the extent that the underlying policy of the insolvent insurer provides coverage. The award of pre-judgment interest is subject to § 2007's $150,000.00 statutory cap.

## III.

PURSUANT TO 36 O.S.1981 § 2012(A), A CLAIMANT MUST EXHAUST ALL OTHER COVERED CLAIMS HE/SHE MIGHT HAVE AGAINST AN INSURER, UNDER AN INSURANCE POLICY, BEFORE RECOVERING FROM THE OKLAHOMA GUARANTY ASSOCIATION. ANY AMOUNT PAYABLE UNDER THE OKLAHOMA GUARANTY ACT IS REDUCED BY THE AMOUNT RECOVERED.

■ Oglesby asserts that: 1) she is not required to exhaust any amounts recoverable from Liberty Mutual before she may recover from the Oklahoma Guaranty Fund;[36] and 2) the Oklahoma Guaranty Fund is not entitled to a credit for any amounts recovered from Liberty Mutual. The Oklahoma Guaranty Association insists that Oglesby must exhaust her rights against Liberty Mutual and apply the recoveries obtained against the $150,000.00 statutory cap. We agree.

In *Welch v. Armer,* 776 P.2d 847, 849 (Okla.1989), this Court considered 36 O.S. 1981 § 2012.[37] We held that: 1) prior to an amendment specifically excluding uninsured motorist coverage from § 2012, the statute required a claimant to exhaust all other covered claims he/she might have against an insurer, under an insurance policy, before recovering from the Oklahoma Guaranty Association; and 2) any amount payable under the Oklahoma Guaranty Act would be reduced by the amount recovered. Our pronouncement in *Welch* is instructive. In *Welch,* we determined that the date of the accident controls application of § 2012. Because the husband here was injured in

**32.** In *NCBN Nat'l Bank v. Florida Ins. Guar. Ass'n,* 541 So.2d 728, 731 (Fla.Dist.Ct.App.1989), the Florida court found that pre-judgment interest could be awarded against the Louisiana Guaranty Association. But see, *Wurth v. Ideal Mut. Ins. Co.,* 34 Ohio App.3d 325, 518 N.E.2d 607, 614 (1987); *City of Greensboro v. Reserve Ins. Co.,* 70 N.C.App. 651, 321 S.E.2d 232, 240 (1984).

**33.** *Seventeen Hundred Peoria, Inc. v. City of Tulsa,* 422 P.2d 840, 843 (Okla.1966); *Oklahoma Alcoholic Beverage Control Bd. v. Central Liquor Co.,* 421 P.2d 244, 248 (Okla.1966).

**34.** Title 36 O.S.Supp.1985 § 2007, see note 2, supra.

**35.** Id.

**36.** Oglesby seeks recovery from Liberty Mutual for the fault attributable to Permian Engineering and on the theory that Cooper Manufacturing is an additional insured of Liberty Mutual.

**37.** Title 36 O.S.1981 § 2012(A), see note 4, supra.

1985, the 1981 version of the statute applies.

Oglesby attempts to distinguish *Welch* on the basis that it did not analyze § 2012 in light of the statutory definition of a "covered claim" contained in 36 O.S.1981 § 2004(3).[38] Section 2012(A) provides in pertinent part:

"... Any person having a claim against an insurer under any provision of an insurance policy other than a policy of the insolvent insurer *which is also a covered claim* shall be required to first exhaust his rights under the policy. Any amount payable *on a covered claim* under this act shall be reduced by the amount of any recovery under such other insurance policy...." (Emphasis supplied.)

Oglesby asserts that the quoted language requires that only those claims against other parties which are also "covered claims" must be exhausted before recovery may be had against the Oklahoma Guaranty Association. Pursuant to § 2004(3), a covered claim is an unpaid claim of an insolvent insurer. Were we to accept Oglesby's argument the result would be counterproductive—claimants would be required to exhaust only unpaid claims against insolvent insurer's, and only those claims recoverable because of the insolvency of an insurance company would be credited against the Oklahoma Guaranty Fund's liability. It is difficult to posit any situation in which the Oklahoma Guaranty Fund would be entitled to the legislatively contemplated credits of § 2012. We avoid a statutory construction leading to an absurdity,[39] and reaffirm the teachings of *Welch*[40]—pursuant to 36 O.S.1981 § 2012(A), a claimant must exhaust all other covered claims he/she might have against an insurer, under an insurance policy, before recovering from the Oklahoma Guaranty Association; any amount payable under the Oklahoma Guaranty Act is reduced by the amount recovered. Oglesby must pursue her claim against Liberty Mutual and apply the recovered amounts toward the Oklahoma Guaranty Fund's $150,000.00 statutory limit.[41]

**38.** Title 36 O.S.1981 § 2004(3), see note 3, supra.

**39.** *LeFlore v. Reflections of Tulsa, Inc.*, 708 P.2d 1068, 1075, 64 A.L.R.4th 1001, 1014 (Okla.1985); *City v. Liddell*, 596 P.2d 879, 882 (Okla.1979).

**40.** Although the states are divided on the necessity of exhaustion, our decision in *Welch v. Armer*, see note 2, supra, is aligned with the majority view. In ten states, the claimants are required to exhaust their rights before recovering from the state guaranty fund: *Ventulett v. Maine Ins. Guar. Ass'n*, 583 A.2d 1022, 1024 (Me.1990); *Northland Ins. Co. v. Virginia Property & Casualty Ins. Guar. Ass'n*, 240 Va. 115, 392 S.E.2d 682, 684 (1990); *Hetzel v. Clarkin*, 244 Kan. 698, 772 P.2d 800, 803–04 (1989); *Arizona Property & Casualty Ins. Guar. Fund v. Herder*, 156 Ariz. 203, 751 P.2d 519, 523 (1988); *Alabama Ins. Guar. Ass'n v. Colonial Freight Sys., Inc.*, 537 So.2d 475–76 (Ala.1988) [An excess insurer will not be required to drop down to provide coverage and thus require a credit to the guaranty association under Alabama law. *Alabama Ins. Guar. Ass'n v. Kinder-Care, Inc.*, 551 So.2d 286, 289 (Ala.1989)]; *Prutzman v. Armstrong*, 90 Wash.2d 118, 579 P.2d 359, 362 (1978) [But see, *Washington Ins. Guar. Ass'n v. McKinstry Co.*, 56 Wash.App. 545, 784 P.2d 190, 192 (1990) (Reduction required only if a claimant has another source of recovery against the insolvent insurer.)]; *Witkowski v. Brown*, 576 A.2d 669, 671 (Del.Super.Ct.1989); *Rinehart v. Hartford Casualty Ins. Co.*, 91 N.C.App. 368, 371 S.E.2d 788, 791 (1988); *Wurth v. Ideal Mut. Ins. Co.*, 34 Ohio App.3d 325, 518 N.E.2d 607, 613 (1987); *Lucas v. Illinois Ins. Guar. Fund*, 52 Ill.App.3d 237, 10 Ill.Dec. 81, 367 N.E.2d 469, 471 (1977). See also, P. Roberts, "Insurance Company Insolvencies & Insurance Guaranty Funds: A Look at the Nonduplication of Recovery Clause," see note 7 at 930, supra; Annot., "Validity, Construction, & Effect of Statute Establishing Compensation for Claims Not Paid Because of Insurer's Insolvency," 30 A.L.R.4th 1110, 1139–1149 (1984); cases contained in note 48, infra requiring exhaustion/credit in the context of workers' compensation benefits.

Five courts have not required exhaustion: *Connecticut Ins. Guar. Ass'n v. Union Carbide Corp.*, see note 11, 585 A.2d at 1225, supra; *Insurance Comm'r v. Property & Casualty Ins. Guar. Corp.*, 313 Md. 518, 546 A.2d 458, 464 (1988); *International Collection Serv. v. Vermont Property & Casualty Ins. Guar. Ass'n*, 150 Vt. 630, 555 A.2d 978, 980 (1988); *Gimmestad v. Gimmestad*, 451 N.W.2d 662, 665 (Minn.Ct.App.1990) (Offset only required if double recovery would result.); *Sands v. Pennsylvania Ins. Guar. Ass'n*, 283 Pa.Super. 217, 423 A.2d 1224, 1227 (1980) (But see, *Blackwell v. Pennsylvania Ins. Guar. Ass'n*, 390 Pa.Super. 31, 567 A.2d 1103, 1105–06 (1989)).

**41.** The discussion here is dispositive of Oglesby's argument that she is not required to exhaust workers' compensation benefits she might

## IV.

### PURSUANT TO 36 O.S.1981 § 2012(B), ANY RECOVERY RECEIVED FOR WORKERS' COMPENSATION BENEFITS UNDER THE OKLAHOMA GUARANTY ACT MUST BE REDUCED BY THE AMOUNT OF THE RECOVERY FROM ANY OTHER INSURANCE GUARANTY ASSOCIATION.

Oglesby makes arguments identical to those presented concerning her recovery for workers' compensation benefits as she does in relation to recovery from Liberty Mutual—that 36 O.S.1981 § 2012(B) [42] does not require her to exhaust claims against the Louisiana Insurance Guaranty Association before seeking recovery from the Oklahoma Guaranty Association and that the Oklahoma Guaranty Fund is not entitled to a credit for the benefits she receives.[43] The Oklahoma Guaranty Association contends that Oglesby must exhaust her rights against the Louisiana Guaranty Association and that the Oklahoma Association is entitled to credit for the workers' compensation benefits received.

■■■ A claimant is entitled to receive the full amount of any covered claim arising out of a workers' compensation policy under the Oklahoma Guaranty Act.[44] Although § 2012(A) may be inartfully drawn, the meaning of § 2012(B) is clear. It provides in pertinent part:

"... Any person having a claim which may be recovered under more than one insurance guaranty association or its equivalent in another state shall seek recovery first from the association of the place of residence of the insured.... if it is a workers' compensation claim, he shall seek recovery first from the association of the residence of the claimant. Any recovery under this act shall be reduced by the amount of recovery from any other insurance guaranty association or its equivalent."

Legislative intent controls judicial statutory interpretation; however, it is unnecessary to apply rules of construction to discern legislative intent if the will is clearly expressed.[45] Section 2012(B) is written in clear, explicit, and mandatory language.[46] It establishes a priority for the recovery of workers' compensation benefits. If, as here, recovery may be made from more than one insurance guaranty association, recovery shall first be sought from the state of residence. Any recovery received for workers' compensation benefits under the Oklahoma Guaranty Act shall be reduced by the amount of the recovery from any other insurance guaranty association. The use of "shall" by the Legislature is normally considered as a legislative mandate equivalent to the term "must", requiring interpretation as a command.[47] We find that pursuant to 36 O.S.1981 § 2012(B) any recovery received for workers' compensation benefits under the Oklahoma Guaranty Act must be reduced by the amount of the recovery received from any other insurance guaranty association.[48] Initially,

receive from Pacific Marine Insurance Company and apply them to the $150,000.00 statutory cap.

**42.** Title 36 O.S.1981 § 2012(B), see note 5, supra.

**43.** If exhaustion is required, Oglesby asks direction on the treatment of workers' compensation benefits to be received in the future. Because we find that 36 O.S.Supp.1981 § 2012(B), see note 5, supra, requires that the Oklahoma Guaranty Fund be credited for workers' compensation benefits paid by the Louisiana Guaranty Association, offset is required. If the Louisiana award has not been reduced to a specific dollar amount, the fact finder must determine some figure constituting the present value of the future benefits. That figure could be deducted from the Oklahoma Guaranty Association's lia-

bility. See, *Withrow v. Red Eagle Oil Co.*, 755 P.2d 622, 625 (Okla.1988); *Gallaspy v. Warner*, 324 P.2d 848, 853 (Okla.1958).

**44.** Title 36 O.S. Supp.1985 § 2007, see note 2, supra.

**45.** *Fuller v. Odom*, see note 15, supra.

**46.** *State ex rel. Cartwright v. Oklahoma Natural Gas*, 640 P.2d 1341, 1345 (Okla.1982).

**47.** *McDonald's v. Groves*, 652 P.2d 281–82 (Okla.1982); *TIB Corp. v. Edmondson*, 630 P.2d 1296–97 (Okla.1981).

**48.** *Sifers v. General Marine Catering Co.*, 897 F.2d 1288, 1292 (5th Cir.1990); *Palmer v. Montana Ins. Guar. Ass'n*, 239 Mont. 78, 779 P.2d 61,

Oglesby must seek recovery for workers' compensation benefits from the Louisiana Guaranty Association. The Oklahoma Guaranty Association may credit recovery from the Louisiana Guaranty Association against any liability for workers' compensation benefits.

## CONCLUSION

Pursuant to 36 O.S.Supp.1985 § 2007,[49] each of the three Oglesby claimants may be entitled to recover up to § 2007's statutory limit of $150,000.00.[50] Oglesby may be entitled to pre-judgment interest incurred after the determination of insolvency, if coverage is contained in the insolvent insurer's policy.[51] However, the award of pre-judgment interest is subject to § 2007's $150,000.00 statutory cap. Section 2012 requires Oglesby to pursue her claim against Liberty Mutual and apply the recovered amounts toward the Oklahoma Guaranty Fund's $150,000.00 statutory limit. Pursuant to 36 O.S.1981 § 2012(B), any recovery received for workers' compensation benefits under the Oklahoma Guaranty Act must be reduced by the amount of the recovery received from the Louisiana Guaranty Association.[52]

## QUESTIONS ANSWERED.

HODGES, V.C.J., and SIMMS, HARGRAVE, and ALMA WILSON, JJ., concur.

OPALA, C.J., and LAVENDER, and SUMMERS, JJ., concur in parts II, III, and IV, dissent from part I.

64 (1989); *Cooper v. Huddy,* see note 11 at 727–28.

**49.** Title 36 O.S.Supp.1985 § 2007, see note 2, supra.

**50.** See discussion on limitation of the Oklahoma Guaranty Fund's liability, note 26, supra.

**51.** Title 36 O.S.1981 § 2004, see note 3, supra.

**52.** Title 36 O.S.1981 § 2012(B), see note 5, supra; *Sifers v. General Marine Catering Co.,* see note 48, supra; *Palmer v. Montana Ins. Guar. Ass'n,* see note 48, supra; *Cooper v. Huddy,* see note 11, supra.