MASSACHUSETTS INSURERS INSOLVENCY FUND *vs.* KELLEY SMITH, administratrix,[1] & others.[2]

Suffolk. October 4, 2010. - December 16, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.[3]

*Massachusetts Insurers Insolvency Fund. Insurance,* Medical malpractice insurance, Insolvency of insurer.

In a civil action seeking a judgment declaring the maximum total amount for which the Massachusetts Insurers Insolvency Fund (Fund) could be liable, under G. L. c. 175D, in an underlying medical malpractice action in which the defendant doctor's insurer had been declared insolvent, the judge properly granted summary judgment in favor of the defendants (the plaintiffs in the underlying action), where the unambiguous language of the insurance policy at issue evidenced an acknowledgment that a medical incident could give rise to more than one claim, and where G. L. c. 175D, § 5 (1) (*a*), did not, by its terms, set a cap for all claims arising from one incident; therefore, the Fund was potentially liable for each claim of the plaintiff family members in the underlying action, subject to the statutory cap of $299,999, and the total of all the claims could not exceed the $1 million aggregate limit of the insurance policy. [564-568]

CIVIL ACTION commenced in the Superior Court Department on September 3, 2008.

The case was heard by *Judith Fabricant,* J., on a motion for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Mark D. Robins* (*Joseph C. Tanski* with him) for the plaintiff.

*Daniel P. Neelon* for Kelley Smith & others.

*Terrance J. Hamilton* for Michael Mason.

IRELAND, J. This case concerns the extent of the potential liability, under G. L. c. 175D, of the Massachusetts Insurers

---

[1]Of the estate of Richard Smith.

[2]Kelley Smith, individually and as parent and next friend of Darren Smith and Molly Smith; and Michael Mason.

[3]Chief Justice Marshall participated in the deliberation on this case prior to her retirement.

Insolvency Fund (Fund) in an underlying medical malpractice action[4] brought by members of the Smith family against Michael Mason (doctor), where his insurance company had been declared insolvent. The Fund commenced a civil action seeking a judgment declaring that the maximum total amount for which it potentially could be liable was the statute's cap of $299,999. The Fund moved for summary judgment. A Superior Court judge denied the motion, concluding that the language of G. L. c. 175D, § 5 (1) (*a*), capping the liability of "each covered claim" means that each family member bringing a claim had the right to recover up to the statutory cap of $299,999, and that the insurance policy's cap means that the total amount awarded on those claims could not exceed the policy limit of $1 million. Summary judgment entered for the defendants. The Fund appealed, and we granted its application for direct appellate review. Because we conclude that, under the "each covered claim" language of the statute, the Fund is potentially liable for up to the statutory cap for each of the claims asserted by the family members, we affirm.

*Statutory scheme.* An overview of the statutory scheme is in order. The Fund is a nonprofit unincorporated legal entity created by G. L. c. 175D, § 3. *Clark Equip. Co.* v. *Massachusetts Insurers Insolvency Fund,* 423 Mass. 165, 166-167 (1996). It stands in place of an insolvent insurer and is obligated to pay "each covered claim" against the insolvent insurer up to $299,999. G. L. c. 175D, § 5 (1) (*a*), (*b*). It is a remedial statute patterned after the Post-Assessment Insurance Guaranty Association Model Bill, promulgated by the National Association of Insurance Commissioners (NAIC), see *Clark Equip. Co.* v. *Massachusetts Insurers Insolvency Fund, supra* at 167 n.2, whose purpose includes "minimiz[ing] financial loss to claimants or policyholders because of the insolvency of the insurer." Property and Casualty Insurance Guaranty Association Model Act, III NAIC Model Laws, Regulations and Guidelines at 540-1 (2009). See *A.W. Chesterton Co.* v. *Massachusetts Insurers Insolvency Fund,* 445 Mass. 502, 525 n.14 (2005).[5] The Fund periodically

---

[4]The underlying medical malpractice case has been stayed pending the resolution of the matter before us. There are other parties to that action that are not parties to this appeal.

[5]See *CD Inv. Co.* v. *California Ins. Guar. Ass'n,* 84 Cal. App. 4th 1410,

assesses member insurers the amounts required to pay claims. G. L. c. 175D, § 5 (1) (*c*). *Massachusetts Motor Vehicle Reinsurance Facility* v. *Commissioner of Ins.*, 379 Mass. 527, 530 (1980). Under G. L. c. 175D, § 13, insurers may recoup amounts paid into the Fund by increasing their rates and premiums. *Clark Equip. Co.* v. *Massachusetts Insurers Insolvency Fund, supra* at 167, citing *Commissioner of Ins.* v. *Massachusetts Insurers Insolvency Fund*, 373 Mass. 798, 799 (1977). Thus the "cost of paying claims against insolvent insurers is ultimately passed on to the insurance-buying public." *Massachusetts Motor Vehicle Reinsurance Facility* v. *Commissioner of Ins., supra.*

Under the statute, "[c]overed claim" is defined, in relevant part, as "an unpaid claim . . . which arises out of and is within the coverage of an insurance policy . . . if such insurer becomes an insolvent insurer and . . . the claimant or insurer is a resident of the commonwealth." G. L. c. 175D, § 1 (2). However, under G. L. c. 175D, § 5 (1) (*a*), the Fund's obligation to pay "include[s] only that amount of each covered claim which . . . is less than three hundred thousand dollars." The Fund is "deemed the insurer to the extent of its obligation on the covered claims." G. L. c. 175D, § 5 (1) (*b*).

*Facts.* We recite the facts only insofar as relevant to the issue raised. In the underlying action, Richard Smith alleged that he suffered injury as a result of spinal surgery performed by the doctor. Smith's wife and two children asserted claims for loss of consortium. The doctor had procured an insurance policy for medical malpractice, the relevant portions of which are as follows:

> Section I states that the insurance "[c]ompany will pay on behalf of the insured all sums that the insured shall become legally obligated to pay as damages because of . . . [i]njury arising out of the rendering of or failure to render . . . professional services."

> Section V establishes a $1 million limit on liability as

1424-1425 (2000), citing 2 Proceedings of the NAIC at 1098 (1970) (discussing comments to National Association of Insurance Commissioners' model law that insolvency undermines public confidence in insurance industry; stating that no policyholder should have to accept anything less than full performance of contract).

the "total limit of the [c]ompany's liability for damages due to each medical incident. This limit of liability shall apply regardless of: (i) the number of persons or entities claiming injuries arising from the medical incident; (ii) the number of claims or suits brought on account of the medical incident."

Section VII defines "[m]edical incident" as "all acts or omissions in the rendering of or failure to render professional services from which a claim arises or claims arise. All such acts or omissions together with all related acts or omissions in the rendering of such professional services to all persons involved therein or affected thereby shall be considered one medical incident."

In 2008, the doctor's insurer was declared insolvent. As a result, the potential liability in the underlying action has been assumed by the Fund. G. L. c. 175D, § 5 (1) (b).

The Fund, relying on provisions of Section V of the policy limiting liability for each "medical incident," argued that all the claims arising from a single medical incident had to be aggregated for purposes of application of the statutory cap. Therefore, it argued, the maximum liability was $299,999.

In her written decision and order, the judge, mindful of the statute's remedial purpose, relied on the plain language of the statute to conclude that if an insured's policy covered a claim, then the statutory cap applied to each claim. She concluded that the family's claims were covered by the policy and rejected the Fund's attempt to equate the policy's maximum coverage for each "medical incident" with the statute's maximum coverage for "each covered claim." The Fund argues that the judge's interpretation of the statute was error.

*Discussion.* "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law. . . . [The reviewing court] may consider any ground supporting the judgment." (Citations omitted.) *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). Moreover, "[w]e exercise de novo review over questions of statutory

construction." *Atlanticare Med. Ctr.* v. *Commissioner of the Div. of Med. Assistance*, 439 Mass. 1, 6 (2003). "The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished." *Lowery* v. *Klemm*, 446 Mass. 572, 576-577 (2006), quoting *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). Clear and unambiguous language in a statute is conclusive as to legislative intent. *Commissioner of Correction* v. *Superior Court Dep't of the Trial Court for the County of Worcester*, 446 Mass. 123, 124 (2006). Moreover, "a remedial statute . . . should be given a broad interpretation . . . in light of its purpose . . . to 'promote the accomplishment of its beneficent design.' " *Sellers's Case*, 452 Mass. 804, 810 (2008), quoting *Neff* v. *Commissioner of the Dep't of Indus. Accs.*, 421 Mass. 70, 73 (1995).

We begin, as did the judge, with an interpretation of the insurance policy, which is a question of law. *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982). If the terms of the policy are unambiguous, its interpretation is appropriate for summary judgment. *Sullivan* v. *Southland Life Ins. Co.*, 67 Mass. App. Ct. 439, 442 (2006). Any ambiguity in the policy is construed against the insurer. *Liberty Mut. Ins. Co.* v. *Tabor*, 407 Mass. 354, 362 (1990), quoting *Transamerica Ins. Co.* v. *Norfolk & Dedham Mut. Fire Ins. Co.*, 361 Mass. 144, 147 (1972).

We agree with the judge that the language of the policy evidences an acknowledgment that a medical incident could give rise to more than one claim. Under Section I, injuries "arising out of . . . professional services" are covered. The language of Section VII, defining "medical incident," states that "all related acts or omissions in the rendering of such professional services to all persons involved therein *or affected thereby* shall be considered one medical incident" (emphasis added). Section V (a) (i) and (ii) references multiple persons with multiple claims for each "medical incident." Section V then functions to limit the aggregate amount of liability for all claims arising out of a medical incident to $1 million. Under

Massachusetts law, a policy must be interpreted in a manner consistent with "what an objectively reasonable insured . . . would expect to be covered." *McGregor* v. *Allamerica Ins. Co.*, 449 Mass. 400, 402 (2007), quoting *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, 407 Mass. 689, 700 (1990). Moreover, loss of consortium is a separate claim under Massachusetts law. See *Pinheiro* v. *Medical Malpractice Joint Underwriting Ass'n of Mass.*, 406 Mass. 288, 289, 291-292 (1989), where the court interpreted language in an insurance policy covering a claim or claims "because of injury to or death of any one person" to include loss of consortium. Accordingly, all of the Smith family's claims, including those for loss of consortium, are covered under the policy.[6]

The Fund does not argue that the terms of the policy are ambiguous or that, if the insurer were solvent, each claim raised by the family members would not be covered by the insurance policy up to a limit of $1 million. Instead, it argues that the extent of its liability is made solely by reference to the policy and that the policy "provisions [here] establish a single coverage obligation for damages for all claims arising out of one medical incident." In short, the Fund argues, as it did below, that the aggregate limit the insurance company will pay for each "medical incident" is synonymous with the limit on "each covered claim" under § 5 (1) (*a*) of the statute.[7] We disagree.

As the judge concluded, under the plain language of the statute, there is no "reference to aggregation provisions of a policy, nor does [the statute] refer to an occurrence, or a medical or other

---

[6]In their first amended complaint in the underlying action, each member of the Smith family asserted claims for injury under multiple theories (i.e., negligence, failure to obtain Richard's informed consent, performing an unnecessary surgery, and negligently performing a laminectomy). In their counterclaim for declaratory judgment in this case, the Smiths stated that each family member's set of claims constituted a separate covered claim under the statute, i.e., each member of the family had one (covered) claim that is subject to the cap of $299,999.

[7]The Fund also argues that several Superior Court decisions support its position, including two involving the same policy. Although we may find the reasoning of Superior Court opinions persuasive, they have no precedential value. *Thurdin* v. *SEI Boston, LLC*, 452 Mass. 436, 455 n.27 (2008), citing *Ciampi* v. *Commissioner of Correction*, 452 Mass. 162, 169 n.11 (2008) (court did not rely on "fifteen years of thoughtful decisions made by" Superior Court judges). Here, we are relying on the plain language of the statute.

type of incident as a trigger for application of the statutory cap. It does not, by its terms, set a cap for all claims arising from an incident. Rather, § 5 (1) (*a*) refers to each 'claim' as the basis for the application of the cap; it limits the Fund's liability to 'that amount of each covered claim' that is less than $300,000. A claim must be 'covered' by the policy to trigger the Fund's liability, and the policy determines what claims are or are not covered, but once that determination has been made, it is the statutory language, not any aggregation provision of the policy, that governs application of the cap. [Here, t]hat language . . . requires application of the cap separately to each covered claim, so that the Fund is obligated with respect to each claim for an amount up to $299,999." As the Supreme Court of Oklahoma noted, the word "each" means that every claim should be separately considered and that "[t]he Legislature's use of the word 'each' rather than 'all' covered claims indicates that it anticipated the possibility of multiple recoveries." *Oglesby* v. *Liberty Mut. Ins. Co.*, 832 P.2d 834, 840 (Okla. 1992).

The Fund's interpretation would require us to substitute the word "occurrence" for the word "claim" in the statute. There is no basis to do so. See *Commissioner of Correction* v. *Superior Court Dep't of the Trial Court for the County of Worcester*, 446 Mass. 123, 126 (2006), citing *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 803 (1999) ("We do not read into [a] statute a provision which the Legislature did not see fit to put there, nor add words that the Legislature had an option to, but chose not to include"); *Bronstein* v. *Prudential Ins. Co. of Am.*, 390 Mass. 701, 708 (1984) (court cannot insert words into statute that is clear and unambiguous). Here, as the judge stated: "The [L]egislature has set a limit on the amount of the Fund's liability with respect to each claim, so as to avoid undue impact on the overall cost of insurance, but it has not seen fit to impose that limit in the aggregate on groups or sets of claims that arise from a single occurrence. . . . The legislative choice reflects a balancing of the interests of claimants and insureds against the interest of premium payers overall."

Our reading of the statute's language to provide coverage to each claim also comports with its remedial purpose, which is to protect claimants and policyholders from financial loss as a

result of insurer insolvency. See *A.W. Chesterton Co.* v. *Massachusetts Insurers Insolvency Fund*, 445 Mass. 502, 525 (2005); *Clark Equip. Co.* v. *Massachusetts Insurers Insolvency Fund*, 423 Mass. 165, 167 (1996). To limit the liability of the fund to a single occurrence would make illusory the "[r]ecovery . . . the Legislature intended to provide." *Oglesby* v. *Liberty Mut. Ins. Co., supra.*[8]

*Conclusion.* For the reasons set forth above, we conclude that the Fund is potentially liable for each claim of the family members, subject to the statutory cap of $299,999, and that the total of all the claims cannot exceed the $1 million aggregate limit of the insurance policy. Accordingly, we affirm the denial of the Fund's motion for summary judgment and the entry of summary judgment for the defendants.

*So ordered.*

---

[8]The parties spend much time discussing numerous cases from other jurisdictions concerning the interpretation of similar provisions. Because we conclude that our interpretation of the statute is compelled by its plain language, we need not belabor the conflicting decisions from other jurisdictions. We have read the cases and find nothing that would persuade us to alter our conclusion. See, e.g., *Igwilo* v. *Property & Cas. Ins. Guar. Corp.*, 131 Md. App. 629, 645 (2000) (all claims arising out of bodily injury to one person is one covered claim for purposes of statutory cap); *Oglesby* v. *Liberty Mut. Ins. Co.*, 832 P.2d 834, 840 (Okla. 1992) (statutory cap applied separately to each claim); *West Virginia Ins. Guar. Ass'n* v. *Potts*, 209 W. Va. 682, 686-688 (2001), *S.C.*, 214 W. Va. 332 (2003) (comparing cases from other jurisdictions; holding that statutory cap applies separately to each claim).