NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-307                                          Appeals Court

GUARDIANSHIP OF B.V.G.


No. 14-P-307.

Norfolk.     December 1, 2014. - April 6, 2015.

Present:  Rubin, Milkey, & Carhart, JJ.


Practice, Civil, Guardianship proceeding, Standing,
     Intervention.  Probate Court, Standing.  Words, "Interested
     person."


     Petition for guardianship filed in the Norfolk Division of
the Probate and Family Court Department on February 16, 2011.

     A motion to intervene was heard by George F. Phelan, J.


     Anthony D. Martin (Jennifer L. Mikels with him) for the
grandfather.
     Adam J. Nussenbaum for the father.


     MILKEY, J.  For years, the maternal grandfather of B.V.G.

has sought to rekindle his relationship with B.V.G., his adult

granddaughter.  He alleges that these efforts have been stymied

by her father, who serves as her temporary guardian.  Based on

his asserted interest in B.V.G.'s welfare, the grandfather filed

a motion to intervene in the Probate and Family Court

guardianship proceedings.[1]  The judge denied that motion based on his conclusion that, as a matter of law, the grandfather lacked standing under § 5-306(c) of the Massachusetts Uniform Probate Code (MUPC), G. L. c. 190B.  We affirm, but on different grounds.

Background.  The pertinent facts, which are largely uncontested, are drawn from the representations the parties (or their counsel) made at the nonevidentiary hearing on the grandfather's motion to intervene.  See Local 589, Amalgamated Transit Union v. Massachusetts Bay Transp. Authy., 392 Mass. 407, 408 (1984).  See also Keene v. Brigham & Women's Hosp., Inc., 56 Mass. App. Ct. 10, 11 (2002), S.C., 439 Mass. 223 (2003).  Open factual disputes are noted.

B.V.G., born in 1993, suffers from a number of serious impairments, including an intellectual disability,[2] Tourette syndrome, and emotional difficulties.  Her parents separated when she was a child, and a long custody battle ensued between

---

[1] The motion sought intervention as of right pursuant to Mass.R.Civ.P. 24(a), 365 Mass. 769 (1974), and, in the alternative, permissive intervention pursuant to Mass.R.Civ.P. 24(b).

[2] The parties and probate judge used the term "mentally retarded."  As recently noted by the United States Supreme Court, this term is no longer employed by mental health clinicians.  See Hall v. Florida, 134 S. Ct. 1986, 1990 (2014).  See also St. 2010, c. 239 ("An Act Eliminating the Word 'Retardation' from the General Laws").

her father and her mother, who, by her own admission, was in a "bad situation, a bad place in my life at that time." In 2005, the father was awarded sole legal and physical custody, and he retained such custody of B.V.G. until 2011, when she reached the age of majority. During that period, B.V.G. had no contact with her mother or any of her maternal relatives, including the grandfather.[3]

In 2011, on his own petition, the father was appointed B.V.G.'s temporary guardian. The temporary guardianship order contemplated a rapprochement between B.V.G. and her mother. Thus, the order provided for supervised visitation between the two, and it stated that if B.V.G. expressed a desire to have contact with the mother, the father was not to interfere. In January, 2013, the temporary guardianship was extended until April, 2013, by a stipulation signed by the father, the mother, and an attorney appointed to represent B.V.G. The stipulation also nominally provided for some contact between B.V.G. and the grandfather. Specifically, it provided that, each day, the grandfather could send one electronic mail message (e-mail) to B.V.G. and could receive one e-mail from her. However, that provision proved unworkable, in part because B.V.G. had no e-

---

[3] Before custody had been resolved, the grandfather filed a complaint for grandparent visitation pursuant to G. L. c. 119, § 39D. The complaint languished without judgment, and since then the grandfather has not been able to visit B.V.G.

mail access at the residential treatment program at which she spent her weekdays. In addition, according to the grandfather, the father blocked B.V.G. from receiving the grandfather's e-mails on the computer at the father's home (where B.V.G. spends her weekends).

In April, 2013, the grandfather filed the motion to intervene in the pending guardianship proceeding. He did not contest that B.V.G. needed a permanent guardian, nor did he oppose the father's appointment to that role. Rather, the grandfather merely sought limitations on the father's ability to deny B.V.G. contact with him.

At the hearing on the motion, the mother characterized the grandfather's and B.V.G.'s historical relationship as "strong," and she supported the grandfather's claim that the father systematically has tried to "cut off" the grandfather from B.V.G. B.V.G. was able to circumvent such efforts by pursuing some contact with the grandfather via the Internet social networking service known as Facebook. Examples of such communications, submitted to the motion judge, reflect B.V.G.'s evident affection toward the grandfather. For his part, the father acknowledged that the granddaughter wanted to have contact with the grandfather. He also did not dispute the fact that he had restricted that relationship. Rather, the father focused on his right to do so.

As noted, B.V.G. appeared at the hearing through an attorney appointed to represent her. The attorney declined to state a definitive position on whether the grandfather should be allowed to intervene. The attorney explained that B.V.G. supported the grandfather's goal of increased contact,[4] but he preferred the simplicity of trying to negotiate a resolution with the father and mother, without the grandfather having party status.

In denying the motion to intervene, the judge did not question that the grandfather was pursuing intervention out of a genuine interest in B.V.G.'s welfare. Nor does the judge's decision otherwise purport to rest on any facts particular to the grandfather. Rather, the judge concluded that the grandfather's asserted interest in B.V.G.'s welfare was insufficient as a matter of law to provide him standing to intervene either as of right or permissively. According to the judge, only a person who has a "financial" or other such tangible interest in the guardianship proceeding could qualify as an "other interested person" under G. L. c. 190B, § 5-306(c). The judge reasoned that to construe the statute otherwise would invite even legal strangers with a mere "curious interest in the

_____

[4] Although B.V.G.'s counsel vaguely alluded to "problems" in the past arising from her having contact with her maternal relatives, neither he nor the father raised any specific reasons why increased contact between the grandfather and B.V.G. was contrary to her best interests.

proceeding" to intervene in guardianship cases.[5]  He also expressed concern that the grandfather's "insertion into the case derogates Father's authority" as the "lifestyle standard bearer for [B.V.G.] pursuant to Troxel v. Granville, 530 U.S. 57 (2000)."  The grandfather filed a timely appeal.

Discussion.  a.  Standing under the MUPC.  We begin by addressing the judge's interpretation of the MUPC, which was enacted in 2008.[6]  We review the judge's construction of the statute de novo.  See Rotondi v. Contributory Retirement Appeal Bd., 463 Mass. 644, 648 (2012).  However, before turning to the language of the MUPC, we note that the Supreme Judicial Court long ago addressed a similar standing question under the guardianship statute that preceded the MUPC, former G. L. c. 201.  Gardiner v. Jardine, 245 Mass. 274 (1923).[7]  Section 14 of G. L. c. 201, as then in effect, permitted petitions for appointments of temporary guardians by, inter alia, "other

---

[5] While denying the motion to intervene, the judge appointed a guardian ad litem (GAL) to assist him in evaluating B.V.G.'s best interests.  Although any further proceedings involving the GAL are not part of the appellate record, both parties have indicated that the GAL has not to date addressed the subject matter of this dispute, B.V.G.'s contact with the grandfather.

[6] Article V of the MUPC, which governs guardianships and conservatorships, G. L. c. 190B, §§ 5-101 et seq., inserted by St. 2008, c. 521, § 9, became effective July 1, 2009.

[7] See generally Verizon New England Inc. v. Board of Assessors of Newton, 81 Mass. App. Ct. 457, 461 (2012) (examining Supreme Judicial Court's interpretation of same language in prior version of statute).

person[s] in interest." Gardiner, supra at 277. In Gardiner, the plaintiff sought to revoke the appointment of the defendant as temporary guardian of the plaintiff's niece. Responding to the plaintiff's contention that the defendant lacked standing as a "person in interest" absent an economic stake in the proceedings, the court held that "[a] person in interest within the meaning of the statute need not be one having a pecuniary interest or whose private rights are affected"; rather, such language was "broad enough" to include those who were motivated by a "humanitarian interest" in the incapacitated person's welfare. Ibid. See Morrison v. Jackman, 297 Mass. 161, 163 (1937). We turn to whether the language, structure, or purpose of the MUPC requires a different interpretation.

In considering the grandfather's motion to intervene, the judge focused on the language of G. L. c. 190B, § 5-306(c), inserted by St. 2008, c. 521, § 9, which states, in relevant part:

> "The court, at the time of appointment or later, on its own motion or on appropriate petition or motion of the incapacitated person or other interested person, may limit the powers of a guardian otherwise conferred by parts 1 to 4, inclusive, of this article and thereby create a limited guardianship."

According to the general definition section of the MUPC, the term "interested person"

> "includes heirs, devisees, children, spouses, creditors, beneficiaries, and any others having a property right in or

> claims against a trust estate or the estate of a decedent, ward, or protected person.  It also includes persons having priority for appointment as personal representative, and other fiduciaries representing interested persons.  The meaning as it relates to particular persons may vary from time to time and shall be determined according to the particular purposes of, and matter involved in, any proceeding."

G. L. c. 190B, § 1-201(24), inserted by St. 2008, c. 521, § 9.

The father argues that under this language, a person generally cannot qualify as an "interested person" unless he or she has a financial stake in the outcome of the proceedings.  We find this argument unpersuasive for several reasons.

While the definition of "interested person" does plainly "include" various categories of people who have a financial stake in a proceeding, the use of the word "include" -- in the context of this case -- indicates that the list was not intended to be exclusive.  See Commonwealth v. Durham, 446 Mass. 212, 219, cert. denied, 549 U.S. 855 (2006).  This interpretation is reinforced by the fact that the general definitions set forth in G. L. c. 190B, § 1-201, apply to many different types of MUPC proceedings, including, for example, trust and conservatorship proceedings.  Accordingly, the opening sentence of § 1-201 explicitly recognizes that the general definitions contained in that section do not apply if "the context otherwise requires." The definition of "interested person" itself expressly emphasizes that its meaning will vary depending on the context

"and shall be determined according to the particular purposes of, and matter involved in, any proceeding." G. L. c. 190B, § 1-201(24).

In addition, the meaning of G. L. c. 190B, § 5-306(c), must be considered in conjunction with the surrounding sections of the statute in order that they may be construed in harmony with one another. See Locator Servs. Group, Ltd. v. Treasurer & Recr. Gen., 443 Mass. 837, 859 (2005). Section 5-303(a) of G. L. c. 190B, inserted by St. 2008, c. 521, § 9, governing petitions for guardianship, does not use the term "interested person" but, instead, authorizes the filing of such petitions by "any person interested in the welfare of the person alleged to be incapacitated."[8] Although even that broad category is not without limits,[9] we think it plain that, under the facts of this

---

[8] Section 5-303(a) states in pertinent part: "An incapacitated person or any person interested in the welfare of the person alleged to be incapacitated may petition for . . . the appointment of a guardian, limited or general." Section 5-311, which concerns petitions for the removal of guardians and termination of guardianships, likewise authorizes such petitions to be filed by "any person interested in the incapacitated person's welfare." G. L. c. 190B, § 5-311(a),(b), inserted by St. 2008, c. 521, § 9.

[9] As the comments to the Uniform Probate Code (UPC) indicate, in order to qualify as a "person interested in the welfare" of a person subject to protective proceedings under UPC Article V, a judge must first find that the potential petitioner has (1) a serious interest or concern for the incapacitated person's welfare, and (2) knowledge of the circumstances. See UPC comment to G. L. c. 190B, § 5-206(a), 31 Mass. Gen. Laws Ann. at 548 (West 2012). Past decisions interpreting sections

case, the grandfather would qualify.  To adopt the father's proposed interpretation would yield the discordant result that the grandfather would have had standing to file his own petition for a limited guardianship pursuant to § 5-303, yet lack standing to petition the court to impose a limited guardianship pursuant to § 5-306(c).  That would make little sense.  In our view, in the context of guardianship proceedings, the Legislature intended the terms "interested person" and "person interested in the welfare of the [incapacitated] person" as equivalent.

Our interpretation is also supported by the over-all purpose of the guardianship statute.  Although the powers of a guardian under the MUPC are similar in many respects to those of guardians under the former G. L. c. 201, one important way in which the new statute differs is in its favoring limited guardianships in order to maximize the liberty and autonomy of persons subject to guardianship.  For example, G. L. c. 190B,

---

of the UPC adopted in Massachusetts have relied on the comments to the uniform statute for guidance.  See, e.g., First Eastern Bank, N.A. v. Jones, 413 Mass. 654, 660 & n.7 (1992).  Although G. L. c. 190B, § 5-206(a), governs guardianships of minors, not those of incapacitated adults, "[w]here the Legislature uses the same words in several sections which concern the same subject matter, the words 'must be presumed to have been used with the same meaning in each section.'"  Commonwealth v. Wynton W., 459 Mass. 745, 747 (2011), quoting from Insurance Rating Bd. v. Commissioner of Ins., 356 Mass. 184, 188-189 (1969).

§ 5-306(a), inserted by St. 2008, c. 521, § 9, begins with the following command:

> "The court shall exercise the authority conferred in this part so as to encourage the development of maximum self-reliance and independence of the incapacitated person and make appointive or other orders only to the extent necessitated by the incapacitated person's limitations or other conditions warranting the procedure."

Moreover, the MUPC requires judges to impose limitations on an incapacitated person's liberty only to the extent the person's needs "cannot be met by less restrictive means." G. L. c. 190B, § 5-306(b)(8), inserted by St. 2008, c. 521, § 9. Other sections striking the same theme abound.[10] Allowing a broader class of individuals than those with economic interests to press for limitations on a guardianship furthers that goal.

Finally, we note that our reading of the term "interested person" as used in the guardianship context is in accord with other jurisdictions that have addressed the question under parallel statutes. See, e.g., Guardianship of Williams, 159 N.H. 318 (2009). In Williams, the New Hampshire Supreme Court addressed standing under its own version of Article V on very

---

[10] Pursuant to G. L. c. 190B, § 5-309(a), inserted by St. 2008, c. 521, § 9, guardians are required to encourage, "to the extent possible," the incapacitated person to "participate in decisions" and to only "act on [the incapacitated person's] own behalf," and also to "consider the expressed desires and personal values of the incapacitated person when making decisions." They are also under an affirmative duty to "immediately notify the court if the incapacitated person's condition has changed so that he or she is capable of exercising rights previously limited."

similar facts.  The petitioner, who had no apparent financial or property interest in the guardianship of her brother and did not challenge the appointment of her sisters as coguardians, filed a petition in the pending proceeding to limit the scope of her brother's guardianship.  Id. at 320-321.  The court agreed that the petitioner was an "interested person" in the proceedings with a right to "participate fully," and concluded that the legislative intent in allowing petitions by any "interested person" was to "promote the broadest possible protection for a proposed ward by granting generous standing to any adult with an interest in the proposed ward's welfare."  Id. at 325.  See Conservatorship of Kloss, 326 Mont. 117, 119-120 (2005); Guardianship & Conservatorship of Cordel, 274 Neb. 545, 551 (2007).[11]

   b.  Denial of the motion to intervene.  Having concluded that the grandfather does not lack standing to intervene in order to petition as an "interested person" under § 5-306(c), we next turn to whether the judge's decision to deny the grandfather's motion to intervene should be affirmed on other

_____

   [11] As noted, the judge also expressed his concern that the grandfather's "insertion into the case derogates Father's authority" as the "lifestyle standard bearer for [B.V.G.] pursuant to Troxel v. Granville, 530 U.S. 57 (2000)."  As the father acknowledges, the stringent constitutional protections for parental autonomy implicated by Troxel are not germane to this proceeding, because B.V.G. is a legal adult, not a minor child.

grounds.  In arguing below that he could intervene as a matter of right, the grandfather relied exclusively on Mass.R.Civ.P. 24(a)(2), 365 Mass. 769 (1974),[12] which provides for intervention of right

> "when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

"The burden of showing the inadequacy of the representation is on the applicant [seeking to intervene]."  Massachusetts Fedn. of Teachers, AFT, AFL-CIO v. School Comm. of Chelsea, 409 Mass. 203, 206 (1991), quoting from Attorney Gen. v. Brockton Agric. Soc., 390 Mass. 431, 434 (1983).  The judge "enjoys a full range of reasonable discretion in evaluating whether the requirements

---

[12] On appeal, the grandfather argues for the first time that as a person interested in B.V.G.'s welfare, he has an unconditional statutory right under the MUPC to intervene in the guardianship proceedings pursuant to Mass.R.Civ.P. 24(a)(1). That argument has been waived.  Cf. Shafnacker v. Raymond James & Assocs., 425 Mass. 724, 731 (1997).  Although we do not reach that issue, we note that multiple cases construing the parallel Federal rule have done so very narrowly.  See, e.g., Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 641 (1st Cir. 1989) (noting in context of Federal hazardous substance law that "[r]ule 24[a][1] is narrowly construed; private parties are rarely given an unconditional right to intervene"); Fuel Oil Supply & Terminaling v. Gulf Oil Corp., 762 F.2d 1283, 1286 (5th Cir. 1985) (noting same in bankruptcy context).  See generally Doe v. Senechal, 431 Mass. 78, 81 n.8, cert. denied, 531 U.S. 825 (2000), quoting from Van Christo Advertising, Inc. v. M/A-COM/LCS, 426 Mass. 410, 414 (1998) ("In construing our rules of civil procedure, we are guided by judicial interpretations of the cognate Federal rule 'absent compelling reasons to the contrary or significant differences in content'").

for intervention have been satisfied."  Peabody Fedn. of Teachers, Local 1289, AFT, AFL-CIO v. School Comm. of Peabody, 28 Mass. App. Ct. 410, 413 (1990).  Moreover, "[a] judge has discretion in determining whether [a] . . . party has demonstrated facts that entitle him or her to intervene as of right, and we . . . review the judge's factual findings for clear error."  Commonwealth v. Fremont Inv. & Loan, 459 Mass. 209, 217 (2011).

Because the motion judge's decision nominally turned on his erroneous conclusion that the grandfather lacked standing to assert B.V.G.'s interests, the judge did not overtly state how he would exercise his discretion under the proper reading of the MUPC.  In such circumstances, we ordinarily would remand the matter so that the judge could address that issue.  However, a close reading of the judge's decision reveals that he determined that B.V.G.'s interests were adequately represented without the grandfather's participation as a party.[13]  Given the resources already expended on the intervention issue, and given that it is plain how the judge would exercise his discretion in resolving

_____

[13] Thus, for example, the judge concluded that the appointment of counsel to represent B.V.G. "vitiat[ed] grandfather's assertion that [her] interests are not adequately represented," and the judge specifically stated that he was "satisfied that B.V.G.'s appointed counsel will serve" her interest in having contact with the grandfather.

that question, we proceed to review whether his findings regarding adequate representation are supported.

On the record before us, there is no basis for disturbing the judge's assessment.  At the motion hearing, B.V.G.'s counsel indicated he was largely in agreement that fostering a relationship with the grandfather would be beneficial for B.V.G., and the grandfather has made no showing that B.V.G.'s attorney will fail to press that issue going forward.  The fact that counsel took a neutral position on the grandfather's motion to intervene is not inconsistent with fulfilling counsel's role in advocating for his client's best interests.  We have no basis for impugning the adequacy of B.V.G.'s current representation, and we therefore conclude that it was well within the judge's purview to deny the motion.  This is especially so given that the judge appointed a GAL to assess B.V.G.'s interests.  We trust that the advocacy of B.V.G.'s counsel, along with the findings of the GAL, will help ensure that B.V.G.'s best interests are at the forefront in structuring the terms of the guardianship.[14], [15]

---

[14] To the extent that the grandfather argues that he should have been allowed to intervene permissively pursuant to Mass.R.Civ.P. 24(b), the conclusions we have drawn with regard to intervention as of right apply to that issue as well.

[15] The father seeks an award of appellate fees and double costs under Mass.R.A.P. 25, as appearing in 376 Mass. 949 (1979), and G. L. c. 211A, § 15, on the ground that the instant

<u>Order denying motion to
intervene affirmed</u>.

---

appeal is frivolous.  See <u>Avery</u> v. <u>Steele</u>, 414 Mass. 450, 455
(1993).  The request is denied.