NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11925

GUARDIANSHIP OF B.V.G.


Norfolk.     December 7, 2015. - May 23, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.


Guardian, Incompetent person.  Probate Court, Guardian, Standing.  Practice, Civil, Appointment of guardian, Intervention, Standing.  Words, "Interested person."



Petition for guardianship filed in the Norfolk Division of the Probate and Family Court Department on February 16, 2011.

A motion to intervene was heard by George F. Phelan, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.


Anthony D. Martin (Jennifer L. Mikels with him) for the grandfather.
Adam J. Nussenbaum for the father.
Frederick M. Misilo, Jr., for The Arc of Massachusetts, Inc., amicus curiae, submitted a brief.


DUFFLY, J.  The maternal grandfather of B.V.G., a young woman with intellectual disabilities, sought to intervene in permanent guardianship proceedings pending in the Probate and

Family Court on the petition of B.V.G.'s father, who had been appointed B.V.G.'s temporary guardian when she was eighteen years old.[1]  The grandfather asserted that his relationship with B.V.G. has been restricted by her father in his capacity as temporary guardian, that B.V.G. has indicated expressly her desire to communicate with him and has sought contact with him via social media, and that such a relationship is in B.V.G.'s best interests.  The grandfather filed a motion to intervene, pursuant to Mass. R. Civ. P. 24, 365 Mass. 769 (1974),[2] in the guardianship proceedings, seeking to limit the father's ability to restrict B.V.G.'s access to the grandfather.

Concluding that the grandfather lacked standing to intervene because he was not an "interested person" within the meaning of G. L. c. 190B, § 5-306 (c), a Probate and Family Court judge denied the motion.  The grandfather appealed, and the Appeals Court affirmed the denial, on grounds other than those relied upon by the motion judge.  See Guardianship of B.V.G., 87 Mass. App. Ct. 250 (2015).  We allowed the

---

[1] B.V.G.'s father had had sole legal and physical custody of her as a minor, from approximately the age of twelve, following her parents' divorce.

[2] The Massachusetts Rules of Civil Procedure apply to Probate and Family Court proceedings in which equitable relief is sought, including matters relative to guardianship and conservatorship.  See G. L. c. 215, § 6; Mass. R. Civ. P. 1, as amended, 450 Mass. 1403 (2008).

grandfather's petition for further appellate review.[3]

General Laws c. 190B, § 5-306 (c), provides that the Probate and Family Court may, "on its own motion or on appropriate petition or motion of the incapacitated person or other interested person, . . . limit the powers of a guardian . . . and thereby create a limited guardianship." Based on our review of the record and the judge's findings, we conclude that the facts relevant to the grandfather's standing to bring the petition are not disputed, and that those facts support the conclusion that the grandfather is an "interested person" within the meaning of G. L. c. 190B, § 5-306 (c). As such, the grandfather is entitled to intervene as of right in the pending proceeding for permanent guardianship.[4]

---

[3] The guardianship proceeding was stayed pending resolution of the appeal.

[4] In his brief, the father contested B.V.G.'s interest in maintaining a relationship with the grandfather, and also challenged whether the grandfather is an "interested person" under G. L. c. 190B, § 5-306 (c). He challenged also whether the grandfather is entitled to file a motion to intervene to limit the proposed permanent guardianship, or to file a separate petition to limit the guardianship pursuant to G. L. c. 190B, § 5-306 (c). At argument before us, the father's position had changed considerably. The father agreed that B.V.G. desires contact with her grandfather, the grandfather is an "interested person" within the meaning of the statute, an "interested person" in that context is one interested in the well-being of the subject of the guardianship petition, and an "interested person" pursuant to G. L. c. 190B, § 5-306 (c), is entitled to file a separate petition to limit a guardianship. The father stated that his remaining challenge was as to whether the grandfather is entitled to intervene in the father's pending

In that proceeding, the grandfather may pursue his claim that the guardianship should be limited because it is in the best interests of B.V.G. that she be permitted to communicate with him if she continues to express a wish to do so. We therefore reverse the order denying the grandfather's motion to intervene and remand the matter to the Probate and Family Court for further proceedings in the pending petition for permanent guardianship, consistent with this opinion.[5]

1. Background and prior proceedings. In considering the grandfather's standing to intervene,[6] the motion judge conducted a nonevidentiary hearing at which B.V.G.'s appointed counsel,[7]

---

petition for permanent guardianship, rather than filing a subsequent petition to limit the proposed permanent guardianship if and when it has been established.

[5] We acknowledge the amicus brief filed in support of the plaintiff submitted by The Arc of Massachusetts, Inc.

[6] Intervention as of right is permitted under Mass. R. Civ. P. 24 (a), 365 Mass. 769 (1974), "when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

[7] B.V.G.'s attorney expressed generally that he viewed contact with her grandfather positively, but took no official position regarding the motion to intervene.

B.V.G.'s attorney had conducted negotiations, on B.V.G.'s request, to improve her relationship with her mother, which resulted in the father's and mother's stipulation concerning B.V.G.'s having increased contact with her mother, and a stipulation added to the temporary guardianship order that the

the father's counsel, the grandfather's counsel, and the mother, appearing pro se, were each permitted to make representations and submit documentary material.  We summarize the uncontested facts based on the judge's decision, supplemented by uncontested statements and documents presented at the hearing.  See Board of Registration in Med. v. Doe, 457 Mass. 738, 745 (2010) (party's concessions and exhibits attached to party's pleadings sufficient to establish facts despite lack of evidentiary hearing).

B.V.G. was born in February, 1993.  She has an intellectual disability as well as attention deficit hyperactivity disorder and Tourette's syndrome.  B.V.G.'s parents, who separated when she was quite young, were divorced following a lengthy and acrimonious custody dispute over B.V.G.  The father was awarded sole legal and physical custody of B.V.G. in 2005, when she was twelve years old.  Although B.V.G. had enjoyed contact with the grandfather until 2005, thereafter, the father precluded contact between B.V.G. and her maternal relatives, including the grandfather.  According to B.V.G.'s mother, B.V.G. had had a "strong relationship" with her grandfather, which B.V.G. wished to maintain while the father had tried to "cut off" this relationship.

father was not to interfere; the attorney stated that he preferred to take this route with the grandfather, and that negotiations were ongoing.

In February, 2011, when B.V.G. reached the age of eighteen, the father filed a petition in the Probate and Family Court seeking to be appointed her legal guardian on the basis of her intellectual disability. The father was appointed B.V.G.'s temporary legal guardian in December, 2011.[8] See G. L. c. 190B, §§ 5-303, 5-308. The order establishing the temporary guardianship authorized B.V.G. to determine with whom she socialized, except for her mother; the order allowed limited supervised visitation between B.V.G. and her mother.[9]

In January, 2013, the father filed a petition seeking permanent guardianship. At that time, the father's temporary guardianship was extended through April, 2013, pending a hearing on his petition for permanent guardianship. A stipulation by the father, the mother, and an attorney appointed to represent B.V.G. was incorporated in the extended guardianship,

---

[8] General Laws c. 190B, §§ 5-303 and 5-308, authorize the appointment of permanent and temporary guardians for an "incapacitated person." Under G. L. c. 190B, § 5-101 (9), an "incapacitated person" is

"an individual who for reasons other than advanced age or minority, has a clinically diagnosed condition that results in an inability to receive and evaluate information or make or communicate decisions to such an extent that the individual lacks the ability to meet essential requirements for physical health, safety, or self-care, even with appropriate technological assistance."

[9] The parties do not dispute that the father has not sought to restrict B.V.G.'s contact with her paternal relatives, that she has had unlimited access to contact with them, and that she has maintained relationships with them.

authorizing slightly increased visitation between B.V.G. and her mother.[10]  The order for temporary guardianship also was amended to authorize certain limited contact between B.V.G. and her grandfather.[11]  Under the terms of that stipulation, the grandfather was permitted to send B.V.G. one electronic mail message per day, and to receive no more than one electronic mail message from her.  This stipulation, however, did not result in increased contact between B.V.G. and the grandfather.  B.V.G. did not have access to electronic mail at the residential treatment program where she lived during the week, and the grandfather contends that, on the weekends, when B.V.G. lived with her father, the father did not permit her to receive electronic mail messages from the grandfather.

Arguing that the father was not furthering B.V.G.'s best

---

[10] Counsel for B.V.G.'s father represented at the nonevidentiary hearing on the grandfather's motion to intervene that B.V.G. and her mother have made some progress in rebuilding their relationship, and that, by agreement, visits have been expanded beyond the terms set forth in the order for temporary guardianship.

[11] The initial guardianship order stated that B.V.G. could choose her own associations, except with respect to the stipulation concerning the mother.  There was no provision in that order restricting B.V.G.'s relationship with her maternal grandfather; on its face, therefore, the first order for temporary guardianship allowed unlimited contact between B.V.G. and the grandfather.  It is undisputed, however, that the father did not permit such contact.  Counsel for B.V.G. stated at the hearing on the grandfather's motion to intervene that "we all took it for granted that grandfather had no rights . . . and father could restrict the contact."

interests by restricting her relationship with him, the grandfather filed a motion to intervene, seeking to limit the pending permanent guardianship pursuant to G. L. c. 190B, § 5-306 (c).  In support of his motion that he was an "interested person," the grandfather submitted printouts of his electronic communications with B.V.G. through a social media Web site as evidence of his caring for B.V.G., and of her wish to have contact with him.  The grandfather's assertion that it was B.V.G. who initiated the electronic contact is supported by these documents.[12]

The father does not suggest that there is any reason that B.V.G. should not be allowed to maintain a relationship with her grandfather, and no longer contests that the grandfather has an interest in B.V.G.'s welfare.  The father also does not dispute that he has restricted B.V.G.'s relationship with the grandfather.  Rather, in response to the grandfather's contention that such a relationship is in B.V.G.'s best interests, the father maintains that, as B.V.G.'s legal guardian, he has the right to determine those with whom she associates.

Concluding that the grandfather was not an "interested

---

[12] Among other things, B.V.G. made the initial "friend" request to her grandfather on a social media Web site, asking to have contact with him; in other messages, B.V.G. told her grandfather that she loves and misses him.

person" within the meaning of G. L. c. 190B, § 5-306 (c), the judge denied the grandfather's motion to intervene as of right.[13] The judge also appointed a guardian ad litem, however, to report to the court on whether B.V.G.'s best interests are served with her present circle of activities, acquaintances, and contacts.

2. Discussion. Review of a question of statutory interpretation is de novo. Water Dep't of Fairhaven v. Department of Envtl. Protection, 455 Mass. 740, 744 (2010). In reviewing a motion to intervene, which involves questions of fact and of law, "[a] judge has discretion in determining whether an intervening party has demonstrated facts that entitle him or her to intervention as of right, and we accordingly review the judge's factual findings for clear error." Commonwealth v. Fremont Inv. & Loan, 459 Mass. 209, 217 (2011). Apart from the discretion to find facts, however, a judge's ruling on a motion to intervene as of right is a ruling of law, not a discretionary matter. See id. ("Whether those facts are sufficient to meet the requirements for intervention is a question of law, . . . and is reviewed as such").

_____

[13] In his motion to intervene, the grandfather also argued that he should be allowed to intervene permissively, pursuant to Mass. R. Civ. P. 24 (b); that motion was denied. Although he filed a notice of appeal from that denial, in his brief the grandfather does not pursue any argument relative to the motion for permissive intervention. The father argues that there was no error in denying the motion for permissive intervention because the grandfather has no right to intervene. See part 2.b, infra.

Here, the motion judge properly concluded that G. L. c. 190B, § 5-306 (c), creates a cognizable interest that may provide the basis upon which to intervene in a pending matter in a motion filed pursuant to Mass. R. Civ. P. 24 (a). As stated, the judge then determined that the grandfather was not an "interested person" within the meaning of G. L. c. 190B, § 5-306 (c). We turn first to the judge's determination that the grandfather is not an "interested person."

a. Meaning of "interested person." General Laws c. 190B, § 5-306 (c), provides that the Probate and Family Court may, "on its own motion or on appropriate petition or motion of the incapacitated person or other interested person, . . . limit the powers of a guardian . . . and thereby create a limited guardianship." An "interested person," as defined by G. L. c. 190B, § 1-201 (24),

> "includes heirs, devisees, children, spouses, creditors, beneficiaries, and any others having a property right in or claims against a trust estate or the estate of a decedent, ward, or protected person. It also includes persons having priority for appointment as personal representative, and other fiduciaries representing interested persons. The meaning as it relates to particular persons may vary from time to time and shall be determined according to the particular purposes of, and matter involved in, any proceeding."

This definition is applicable, inter alia, to all types of guardianships and conservatorships under G. L. c. 190B, including those over minors and incapacitated adults.

In reaching his conclusion that the grandfather is not an "interested person," the motion judge commented that the enumerated definitions of "interested person" in G. L. c. 190B, § 1-201 (24), applicable to all guardianships and conservatorships, "hint of a financial, but not visceral, stake in the underlying proceedings," and that an individual who is "interested in the welfare" of an incapacitated person "may not be sufficient."

To determine the meaning of "interested person" under G. L. c. 190B, § 5-306 (c), we apply fundamental principles of statutory construction. "[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished" (citation omitted). Massachusetts Insurers Insolvency Fund v. Smith, 458 Mass. 561, 565 (2010).

Considering the plain language of the limited guardianship provision outside its statutory context, the "interest" required to qualify as an "interested person" might be viewed both as a potential intervener's own interests in protecting the incapacitated person's estate and as an interest in the well-being of the incapacitated person. "Statutes are to be

interpreted, [however,] not alone according to their simple, literal or strict verbal meaning, but in connection with their development, their progression through the legislative body, the history of the times, [and] prior legislation. . . . General expressions may be restrained by relevant circumstances showing a legislative intent that they be narrowed and used in a particular sense" (citation omitted). Sullivan v. Chief Justice for Admin. & Mgt. of the Trial Court, 448 Mass. 15, 24 (2006).

A guardianship proceeding is designed to effectuate the best interests of the incapacitated person. See Matter of McKnight, 406 Mass. 787, 791 (1990); Guardianship of Anthony, 402 Mass. 723, 726 (1988); King v. Dolan, 255 Mass. 236, 237 (1926). A focus solely on the interests of the potential intervener in the financial estate of the incapacitated person, that might be read in some of the provisions of G. L. c. 190B, § 1-201 (24), does not take into account the express mandate of the expansive language of the last, catch-all provision, stating that "[t]he meaning [of 'interested person'] as it relates to particular persons may vary from time to time and shall be determined according to the particular purposes of, and matter involved in, any proceeding." See G. L. c. 190B, § 1-201 (24).

That purpose is set forth explicitly in G. L. c. 190B, § 5-306 (a): "The court shall exercise the authority conferred in [G. L. c. 190B, §§ 5-301 et seq.,] so as to encourage the

development of maximum self-reliance and independence of the incapacitated person and make appointive and other orders only to the extent necessitated by the incapacitated person's limitations or other conditions warranting the procedure."

The statutory purpose is further explained in the comment accompanying this language in the Uniform Probate Code:

> "The purpose of subsections (a) and (c) is to remind an appointing court that a guardianship under this legislation should not confer more authority over the person of the [incapacitated person] than appears necessary to alleviate the problems caused by the [person's] incapacity.  This is a statement of the general principle underlying a 'limited guardianship' concept.  For example, if the principal reason for the guardianship is the [incapacitated person's] inability to comprehend a personal medical problem, the guardian's authority could be limited to making a judgment, after evaluation of all circumstances, concerning the advisability and form of treatment and to authorize actions necessary to carry out the decision.  Or, if the [incapacitated person's] principal problem stems from memory lapses and associated wanderings, a guardian with authority limited to making arrangements for suitable security against this risk might be indicated. . . .

> "[I]f the court determines that most of a respondent's demonstrated problems probably could be alleviated by the institution of an appropriate authority to manage the [incapacitated person's] property and make appropriate expenditures for the [incapacitated person's] well-being, the court should utilize subsection (b) to recast the proceedings so that a conservator, rather than a guardian, would be appointed."

Uniform Probate Code prior § 5-306 comment, 8 U.L.A. (Part III) 186 (Master ed. 2013).

Given this, reading "interested person" within the meaning of G. L. c. 190B, § 5-306 (c), as providing a means by which to

protect the intervener's own interests, as distinct from the intervener's interest in advancing those of the incapacitated person, is inconsistent with the express purpose of the statutory provision.  See Globe Newspaper Co., petitioner, 461 Mass. 113, 117 (2011) (Legislature presumably is aware of statutory and common law that governs matter which it is enacting).  See also Matter of McKnight, supra at 791; Guardianship of Anthony, supra at 726.  Consistent with the purpose underlying the Legislature's 2008 adoption of the guardianship provisions of the Uniform Probate Code, see St. 2008, c. 521, the ability to create a limited guardianship is intended to maximize the liberty and autonomy of a person subject to guardianship.[14]  See G. L. c. 190B, § 5-306 (b) (8) (court should craft guardianship orders only to extent "person's needs cannot be met by less restrictive means").

From this statutory context, it is clear that the

---

[14] The concept of a limited guardianship arises from the enactment of G. L. c. 190B, § 5-306 (c), in 2008, as part of Massachusetts's adoption of the Uniform Probate Code.  See St. 2008, c. 521, § 9.  Even before codification of this provision, however, Massachusetts courts recognized that "a conscientious judge" must consider carefully the extent to which a guardianship is necessary, being "mindful of the adverse social consequences which might follow an adjudication [that a guardianship is necessary]."  See Guardianship of Roe, 383 Mass. 415, 425 (1981).  We also have emphasized repeatedly that a determination of "incompetence" does not eliminate an individual's interest in dignity and in the expression of autonomous values and desires.  See, e.g., Guardianship of Doe, 411 Mass. 512, 517-518, cert. denied sub nom. Doe v. Gross, 503 U.S. 950 (1992); Matter of Moe, 385 Mass. 555, 566 (1982).

Legislature intended G. L. c. 190B, § 5-306 (c), to provide a means by which an individual interested in the welfare of an incapacitated person could advocate on behalf of that person's interests in obtaining such a limited guardianship.  We therefore conclude that an "interested person" as defined by G. L. c. 190B, § 1-201, within the meaning of G. L. c. 190B, § 5-306 (c), is a "person interested in the welfare of the incapacitated person."  See, e.g., G. L. c. 190B, § 5-306 (a).

Other provisions in G. L. c. 190B further demonstrate that the phrase "interested person" in G. L. c. 190B, § 5-306 (c), is intended to refer to a "person interested in the incapacitated person's welfare."[15]  See Locator Servs. Group, Ltd. v. Treasurer & Receiver Gen., 443 Mass. 837, 859 (2005) (meaning of term should be construed in harmony with surrounding statutory sections).  General Laws c. 190B, §§ 5-303 (a) and 5-311 (a), for instance, permit a court to appoint or remove a guardian for an adult incapacitated person, on petition of any person interested in the incapacitated person's welfare.[16]  The power to

---

[15] Indeed, the form promulgated by the Probate and Family Court for litigants to use in petitioning to limit an existing guardianship of an incapacitated adult allows a "person interested in the welfare" of an incapacitated person to file such a petition.  See Probate and Family Court Guardianship and Conservatorship Form MPC 220.

[16] Pursuant to G. L. c. 190B, § 5-309 (a), defining the powers, rights, and duties of a guardian,

limit a guardianship is inherent in the power to appoint and remove a guardian, and is made explicit in the statutory language. An individual petitioning for appointment of a guardian, for example, may, at the same time, seek limitations to that appointment.[17] See G. L. c. 190B, § 5-303 (a) (petition to appoint guardian may seek "a determination of incapacity, in whole or in part, and the appointment of a guardian, limited or general").

b. Whether the grandfather is an "interested person." Because the motion judge determined that the grandfather was not an "interested person" within the meaning of G. L. c. 190B, § 5-306 (c), he did not reach any determination on the question of the grandfather's and B.V.G.'s interests. We conclude that,

---

"[a] guardian shall exercise authority only as necessitated by the incapacitated person's mental and adaptive limitations, and, to the extent possible, shall encourage the incapacitated person to participate in decisions, to act on his own behalf, and to develop or regain the capacity to manage personal affairs. A guardian, to the extent known, shall consider the expressed desires and personal values of the incapacitated person when making decisions, and shall otherwise act in the incapacitated person's best interest and exercise reasonable care, diligence, and prudence. A guardian shall immediately notify the court if the incapacitated person's condition has changed so that he or she is capable of exercising rights previously limited."

[17] The right to intervene to limit a particular aspect of a guardianship does not, by contrast, extend to participation in the proceeding as a whole. As noted, the removal or appointment of a guardian is governed by other statutory provisions. See G. L. c. 190B, §§ 5-303 (a), 5-311 (a).

based on undisputed facts in the record, the grandfather has demonstrated an interest in B.V.G.'s welfare sufficient to establish that he is an "interested person" within the meaning of G. L. c. 190B, § 5-306 (c).

The grandfather specifically asserted in his motion to intervene that B.V.G. has expressed her interest in having a relationship with him, an interest he reciprocates. Indeed, both B.V.G.'s expressed interest in maintaining a relationship with her grandfather, and the grandfather's ongoing interest in her welfare, are at this point undisputed. Although the father questioned in his brief whether B.V.G. had expressed an interest in a relationship with the grandfather, at oral argument he conceded that she had. Nothing in the record before us indicates that increased contact between B.V.G. and her grandfather would be harmful, and the record reflects that the grandfather has an interest in advocating on B.V.G.'s behalf to limit the guardianship.

The judge noted that the father, as temporary guardian, disagreed with the idea of B.V.G. having any relationship with the grandfather, and the father concedes that he has restricted that relationship. Although G. L. c. 190B, § 5-309 (a), requires a guardian to "consider the expressed desires and personal values of the incapacitated person when making decisions," the father has maintained consistently that, as

guardian, absent an express limitation on his authority, he may restrict B.V.G.'s relationship with her grandfather, because he has the authority to do so.[18]  The record, therefore, supports the conclusion that the grandfather is an "interested person" pursuant to G. L. c. 190B, § 5-306 (c).

The father argues that intervention in the guardianship proceeding is not appropriate because the grandfather has no right to intervene under Mass. R. Civ. P. 24 (a), which generally focuses on the intervener's interests, while a guardianship proceeding focuses on the interests of the incapacitated person.  He argues also that the grandfather has no due process right to intervention, and that the judge did not err in denying permissive intervention.[19]

The father's argument that the grandfather is not entitled to intervene misconstrues the meaning of G. L. c. 190B, § 5-306 (c).  As her temporary guardian, the father properly may argue at a hearing on limiting the guardianship that B.V.G.'s best interests do not include a relationship with her

---

[18] The motion judge, agreeing with the father's view as to this, commented that the grandfather's petition "derogates Father's authority" as the "lifestyle standard bearer for [B.V.G.] pursuant to Troxel v. Granville, 530 U.S. 57 (2000)," a case applicable to parents' control over their minor children.

[19] As stated, see note 13, supra, on appeal the grandfather does not pursue any argument relative to permissive intervention, and because of the result we reach, we do not address it.

grandfather.  As discussed <u>supra</u>, however, the father's argument that the grandfather's intervention is not proper does not take into account the plain language of G. L. c. 190B, § 5-306 (<u>c</u>), which, on its face, entitles an "interested person," one we have concluded is interested in the welfare of the incapacitated person, to intervene to limit a guardianship.

c.  <u>Adequacy of representation</u>.  After concluding that the grandfather was an "interested person," the Appeals Court affirmed the denial of the grandfather's motion on the ground that B.V.G.'s interests were adequately represented by her counsel and the newly appointed guardian ad litem.  See <u>Guardianship of B.V.G.</u>, 87 Mass. App. Ct. 250, 258-259 (2015). General Laws c. 190B, § 5-306 (<u>c</u>), however, protects an interested person's interest in advocating on behalf of an incapacitated person's right to the most appropriately limited guardianship, regardless whether the incapacitated person is already represented.  The provision authorizes a court to limit a guardianship "on its own motion or on appropriate petition or motion of the incapacitated person or other interested person." This language unambiguously grants an "interested person" an equal and unconditional right to petition to limit the guardianship, along with that of the incapacitated person.[20]

_____

[20] During argument before us, the parties expressed uncertainty regarding the proper procedure for seeking

Nothing in the statutory language, or in its legislative history, suggests that an interested person must establish that an incapacitated person is not already adequately represented before being permitted to intervene to limit a guardianship. In adopting the Uniform Probate Code in 2008, and G. L. c. 190B, § 5-306, in particular, the Legislature was aware that a court may appoint both an attorney and a guardian ad litem for an incapacitated person, pursuant to G. L. c. 190B, § 5-106 (a) and (b), if the court determines that the person's interests are not adequately represented, but nevertheless provided an "interested person" the ability to file a motion seeking to limit a guardianship.

Moreover, the language of G. L. c. 190B, § 5-311 (b), relating to the removal or resignation of a guardian and termination of incapacity, and the comments accompanying that language in the Uniform Probate Code, see Uniform Probate Code art. V prefatory note, 8 U.L.A. (Part III) 19 (Master ed. 2013),

---

intervention pursuant to G. L. c. 190B, § 5-306 (c). General Laws c. 190B, § 5-306 (c), affords an "interested person" a statutory right to proceed by motion to intervene in an ongoing guardianship proceeding, to seek to limit the guardianship. Such a motion to intervene may be brought under Mass. R. Civ. P. 24 (a); once a judge has determined, however, that the movant is an "interested person" within the meaning of G. L. c. 190B, § 5-306 (c), as a practical matter, the interested person's ability to vindicate that interest will be impeded if the individual is not allowed to intervene. Where there is no pending petition for guardianship, a person seeking to limit an existing guardianship should file a petition using Probate and Family Court Guardianship and Conservatorship Form MPC 220.

further indicate a legislative preference for encouraging an incapacitated person and other "interested person[s]" to advocate to the court to safeguard the liberty interests of the incapacitated person. General Laws c. 190B, § 5-311 (b), provides:

> "The incapacitated person or any person interested in the welfare of the incapacitated person may petition for an order that the person is no longer incapacitated and for termination of the guardianship. A request for an order may also be made informally to the court."

The comment accompanying this language in the Uniform Probate Code states:

> "The provisions of subsection (b) were designed to provide another protection against the use of guardianship proceedings to secure a lock-up of a person who is not capable of looking out for his or her personal needs. If the safeguards imposed at the time of appointment fail to prevent an unnecessary guardianship, subsection (b) is intended to facilitate [an incapacitated person's] unaided or unassisted efforts to inform the court that an injustice has occurred as a result of the guardianship."

Uniform Probate Code prior § 5-311 comment, 8 U.L.A. (Part III) 198 (Master ed. 2013).

Thus, the Massachusetts implementation of the Uniform Probate Code encourages a broad right of advocacy in favor of an incapacitated person's protected interest in a limited guardianship. Once a judge has concluded that a proposed intervener is an "interested person," therefore, nothing more is required to establish that person's entitlement to intervene as of right.

3.  <u>Conclusion</u>.  The judgment denying the grandfather's motion to intervene is reversed.  The matter is remanded to the Probate and Family Court for further proceedings in the pending petition for permanent guardianship, consistent with this opinion.

<u>So ordered</u>.