NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12390

GUARDIANSHIP OF D.C.


        Norfolk.     January 10, 2018. - May 11, 2018.

     Present:  Gants, C.J., Lowy, Budd, Cypher, & Kafker, JJ.


Guardian.  Nursing Home.  Moot Question.  Probate Court,
     Guardian, Uniform practices.  Practice, Civil, Appointment
     of guardian, Moot case, Report.



     Petition for appointment of a guardian filed in the Norfolk
Division of the Probate and Family Court Department on January
26, 2016.

     The case was heard by George F. Phelan, J., and questions
of law were reported by him to the Appeals Court.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


     Michael C. Boyne (Jessica L. Deratzian also present) for
the hospital.
     Karen Owen Talley, Committee for Public Counsel Services,
for D.C.
     Martin W. Healy, Thomas J. Carey, Jr., John J. Ford, Mark
A. Leahy, Edward Notis-McConarty, Jerry Cohen, & Wynn A.
Gerhard, for Martin W. Healy & others, amici curiae, submitted a
brief.

GANTS, C.J.  The issue presented in this case is whether a Probate and Family Court judge has the legal authority to allow a hospital's request to transfer a patient to a skilled nursing facility where the judge did not find the patient to be an "incapacitated person," as defined in G. L. c. 190B, § 5-101 (9), of the Massachusetts Uniform Probate Code (code), and therefore did not appoint a guardian for the patient.  We conclude that a judge does not have this legal authority.  Where a hospital patient refuses to consent to be transferred to a nursing facility, a judge may order the patient to be admitted to a nursing facility under the code only where the judge finds the patient to be an incapacitated person, and makes the other findings necessary to appoint a guardian under G. L. c. 190B, § 5-306 (b), and then grants the guardian specific authority under G. L. c. 190B, § 5-309 (g), to admit the incapacitated person to a nursing facility after finding that such admission is in the incapacitated person's best interest.[1]

Background.  On January 4, 2016, seventy-nine year old D.C. was admitted to a hospital in Cambridge after suffering a fracture of her left hip.  During the first month of her

---

[1] We acknowledge the amicus brief and letter submitted by Martin W. Healy, Thomas J. Carey, Jr., John J. Ford, Mark A. Leahy, Edward Notis-McConarty, Jerry Cohen, Wynn A. Gerhard, the Massachusetts Chapter of the National Academy of Elder Law Attorneys, Massachusetts Guardianship Policy Institute, and Massachusetts Advocates for Nursing Home Reform.

hospitalization, D.C. also presented with acute renal failure, pancreatitis, and cardiac issues, and she underwent both a coronary bypass and a mechanical heart valve replacement.  D.C. refused to have hip surgery at the time and rejected all medications, including anticoagulants necessitated by her mechanical heart valve.

The hospital's initial verified petition for appointment of a guardian for an incapacitated person and a motion for appointment of a temporary guardian were filed on January 26, 2016.  The hospital alleged that D.C. was mentally incapacitated and unable to communicate; it also sought "specific [c]ourt authorization" to admit her to a nursing facility and, because a substitute judgment determination might be required, to "consent or withhold consent for the entry of a [Do Not Resuscitate, Do Not Intubate, and Comfort Measures Only] order."  The judge granted the petition for temporary guardianship on February 1, 2016, and D.C.'s attorney was appointed as her temporary guardian.[2]  The temporary guardianship was extended on March 2

_____

[2] Temporary guardianships are in effect for ninety days (or longer "upon a finding of extraordinary circumstances") and may be extended thereafter for "good cause shown."  See G. L. c. 190B, § 5-308 (a) (where permanent petition for guardianship is pending, but court finds that waiting for permanent order would "likely result in immediate and substantial harm to the health, safety [or] welfare" of alleged incapacitated person, court may appoint temporary guardian pursuant to motion for temporary guardianship).

after a hearing, but lapsed on June 6, after the judge declined to extend the guardianship.

The hospital filed another motion for appointment of a temporary guardianship in July, 2016, asserting that D.C. was an incapacitated person in need of guardianship based on her insistent refusal of medical care. The medical certificate filed with the petition provided, among other things, that D.C. "has consistently demonstrated the inability to utilize the information given to her about her illness and [the hospital's] proposed treatment options," that her decisions are "putting her health and life in danger," and that she "lacks [the] capacity to make medical decisions at this time."

On September 26, 2016, a different judge conducted a bench trial at the hospital on the petition for guardianship. In a written decision dated November 15, 2016, the judge concluded that the hospital had failed to meet its burden of proving by a preponderance of the evidence that D.C. "is an incapacitated person within the meaning of G. L. c. 190B, § 5-101 (9) [and] that she is incapable of making decisions about medical treatment." He determined that, "although she may be demanding, difficult, obstreperous and plainly refused to assist or participate with various medical care personnel at [the] hospital, [D.C.] has the capacity to discern her medical condition and needs with respect to anticoagulant medications

and hip replacement surgery, and has made [an] informed decision not to participate or engage with the [h]ospital personnel, understanding that her refusal of the medication may be seriously harmful or lead to her death, and further understanding that she requires a hip replacement which cannot proceed without her taking those medications." He therefore dismissed the hospital's petition to appoint a guardian for D.C.

However, the judge allowed the hospital's request that D.C. be transferred to a skilled nursing facility, finding that, notwithstanding D.C.'s refusal to take medications, her current medical condition "no longer requires an acute level of care and her medical needs can be met at a skilled . . . nursing facility."

In November, 2016, the hospital moved for clarification of the court's judgment. During a hearing on the hospital's motion, the judge reiterated his finding that the hospital had failed to prove that D.C. was an incapacitated person and declared that, having so found, he could not order any guardianship, even a limited guardianship, "solely for the purpose of admitting [D.C.] to a skilled nursing facility." He also declined the hospital's request to issue an order regarding the hospital's authority to effectuate D.C.'s transfer to a skilled nursing facility, but he did not revoke his allowance of the hospital's request that she be transferred. Instead, on his

own initiative, he reported three questions of law to the Appeals Court:

> 1.  Must a guardian based on a finding of mental incapacity first be appointed over respondent to authorize petitioner to then admit respondent to a nursing facility?
>
> 2.  Does the Massachusetts Probate and Family Court have the authority to appoint a "limited guardian," over a person not proven to be mentally incapacitated, solely for the purpose of admitting the respondent to a nursing facility?
>
> 3.  Does the Massachusetts Probate and Family Court have the authority to order a not mentally incapacitated hospital patient to be transferred to a nursing facility?

The hospital filed a notice of appeal from the judge's dismissal of the guardianship petition, and moved to consolidate that appeal with the reported matter.  The Appeals Court allowed the motion to consolidate, and we transferred the consolidated case to this court on our own motion.

Before oral argument on the appeal, the hospital filed a new petition for guardianship, which the judge allowed.  On November 8, 2017, the judge found D.C. to be an incapacitated person, appointed a general guardian for her, and specifically granted the guardian the authority to admit D.C. to a nursing facility after finding that such admission was in D.C.'s best interest.

Discussion.  1.  Mootness.  The judge's more recent allowance of the hospital's guardianship petition renders moot the appeal from the judge's dismissal of the earlier petition.

But an exception to the mootness doctrine exists "[w]here a case is 'capable of repetition, yet evading review,'" which may render dismissal on mootness grounds inappropriate.  Seney v. Morhy, 467 Mass. 58, 61 (2014), quoting Wolf v. Commissioner of Pub. Welfare, 367 Mass. 293, 298 (1975).  "In such circumstances, we do not hesitate to reach the merits of cases that no longer involve a live dispute so as to further the public interest."  Aime v. Commonwealth, 414 Mass. 667, 670 (1993).  Here, we decline to reach the merits of the hospital's appeal from the judge's dismissal of the earlier guardianship petition inasmuch as it claims that the judge was clearly erroneous in finding that D.C. was not an incapacitated person. That finding, based on D.C.'s physical and mental condition at the time of the earlier hearing, is unique to her, and those specific factual circumstances are not "capable of repetition" in this or other cases.

However, we shall address the matter reported by the judge, which concerns the lawfulness of allowing a hospital to transfer a patient involuntarily to a skilled nursing facility in the absence of a guardianship.  That particular issue is "capable of repetition and, given the short time periods in which guardianship matters are often decided and the fluidity of the proceedings even after an appointment of a guardian . . . , it is an issue that can easily evade appellate review in the

ordinary course." Guardianship of V.V., 470 Mass. 590, 591-592 (2015). We also note that the guardianship petitions in this case were all filed after July 1, 2009, when the current provisions of the code governing guardianship of incapacitated persons went into effect. See G. L. c. 190B, art. V, §§ 5-301 to 5-313, inserted by St. 2008, c. 521, §§ 9, 44. Since 2009, there has been little appellate jurisprudence interpreting these code provisions, and therefore little opportunity for us to provide further guidance that might advance "[u]niformity of treatment of litigants and the development of a consistent body of law" (citation omitted). Zullo v. Goguen, 423 Mass. 679, 682 (1996). Because guardianship is of significant public importance, and because this case has been fully argued to us, we find it appropriate to address the questions posed by the judge. See Superintendent of Worcester State Hosp. v. Hagberg, 374 Mass. 271, 274 (1978). See also Guardianship of Erma, 459 Mass. 801, 804 (2011) (appeal of substituted judgment treatment order expired and moot, but court "comment[s] briefly on an issue . . . that has public importance, has been fully briefed and argued, and may recur under the [code]").

2. Propriety of judge's reported questions. The judge here declared that he was reporting three specific questions to the Appeals Court pursuant to Mass. R. A. P. 5, as amended, 378 Mass. 930 (1979). That particular rule, however, does not

confer authority on judges to report matters; it simply directs how reported matters are to proceed under the appellate rules once they reach an appellate court.  See Gray v. Commissioner of Revenue, 422 Mass. 666, 667 (1996).  The authority of trial judges to report matters derives from other court rules and statutes, and depends, in part, on the type of case and on which department of the Trial Court is involved.  See, e.g., Mass. R. Civ. P. 64, as amended, 423 Mass. 1410 (1996); Mass. R. Dom. Rel. P. 64; Dist./Mun. Cts. R. A.D.A. 5.  See also G. L. c. 231, §§ 108, 111.

The authority of a Probate and Family Court judge to report matters in a guardianship case such as this derives from G. L. c. 215, § 13.  That statute permits a judge of the Probate and Family Court to report in two types of situations:  (1) where "a case or matter is heard for final determination," the judge "may reserve and report the evidence and all questions of law therein for consideration of the appeals court, and thereupon like proceedings shall be had as upon appeal"; and (2) if after making an interlocutory ruling, the judge "is of opinion that it so affects the merits of the controversy that the matter ought, before further proceedings [in the trial court], to be determined by the appeals court," the judge may report his or her interlocutory ruling for immediate appellate review.  See G. L. c. 215, § 13.  The first path places an undecided case

before the appellate court and puts the appellate court in a position to enter, or order the entry of, the final judgment in the first instance; the second path places before the appellate court the issue of the correctness of a significant interlocutory ruling made by a Probate and Family Court judge. See Dorfman v. Allen, 386 Mass. 136, 138 (1982); Paquette v. Koscotas, 12 Mass. App. Ct. 52, 54-55 (1981).

The judge's report in this case does not appear to fit into either category of reports permitted by G. L. c. 215, § 13. See Matter of Jones, 379 Mass. 826, 828 n. 2 (1980). Nevertheless, as we occasionally do, we address the reported questions. See, e.g., Gray, 422 Mass. at 668; Dorfman, supra at 138. We do so because the questions raised by the report are important and of considerable public interest, and because we anticipate that our discussion of the issues will provide guidance to judges and attorneys in the future.

3. Legal authority under the code to admit a person involuntarily to a nursing facility. The adoption of the code in July, 2009, resulted in a substantial revision to the State's statutory guardianship law. See G. L. c. 190B, art. V, §§ 5-301 to 5-313, inserted by St. 2008, c. 521, §§ 9, 44. As compared with the previous statutory scheme, the "additional protections" offered under the code include a "more precise definition" of the terms "incapacity" and "disability," additional information

required of petitioners at the commencement of guardianship proceedings, and more elaborate reporting requirements for guardians.  See Article V, Protection of Persons Under Disability and Their Property, Massachusetts Comment, in The New MUPC Is Here . . . and Now at 227 (Mass. Cont. Legal Educ. 2012).

The legal standard to be applied when determining whether a guardian may be appointed over an individual requires us to read the definition of an incapacitated person under § 5-101 (9), together with the prerequisites for appointing a guardian under § 5-306 (b).  Section 5-306 (b) provides that, after conducting a hearing, a court may appoint a guardian where the petitioner proves

> "(1) a qualified person seeks appointment; (2) venue is proper; (3) the required notices have been given; (4) any required medical certificate is dated and the examination has taken place within [thirty] days prior to the hearing; (5) any required clinical team report is dated and the examinations have taken place within 180 days prior to the filing of the petition; (6) the person for whom a guardian is sought is an incapacitated person; (7) the appointment is necessary or desirable as a means of providing continuing care and supervision of the incapacitated person; and (8) the person's needs cannot be met by less restrictive means, including use of appropriate technological assistance"  (emphasis added).

See also G. L. c. 190B, § 1-201 (22) ("'Incapacitated person,' an individual for whom a guardian has been appointed under part 3 of [G. L. c. 190B,] article V").

The definition of an "incapacitated person" supplies the substantive grounds for appointing a guardian for an individual, for reasons apart from advanced age or youth. See Article V, Protection of Persons Under Disability and Their Property, Prefatory Note, supra. Under G. L. c. 190, § 5-101 (9), an "incapacitated person" is defined as

> "an individual who for reasons other than advanced age or minority, has a clinically diagnosed condition that results in an inability to receive and evaluate information or make or communicate decisions to such an extent that the individual lacks the ability to meet essential requirements for physical health, safety, or self-care, even with appropriate technological assistance."

The standard of proof to be applied in a guardianship proceeding is a preponderance of the evidence, see G. L. c. 190B, § 1-109, and the burden of proof rests with the petitioner to prove that a person is incapacitated. See Willett v. Willett, 333 Mass. 323, 324 (1955).

A guardianship may be general or limited in scope. See G. L. c. 190B, § 5-303 (a) ("An incapacitated person or any person interested in the welfare of the person alleged to be incapacitated may petition for a determination of incapacity, in whole or in part, and the appointment of a guardian, limited or general"). When filing a petition for the appointment of a guardian for an incapacitated person, a petitioner must indicate on the form whether a general or limited guardianship is sought, and define the scope of the guardianship. In the event that a

general guardianship is sought, the petitioner must offer an explanation as to why a limited guardianship is "inappropriate." "[T]he ability to create a limited guardianship is intended to maximize the liberty and autonomy of a person subject to guardianship."  Guardianship of B.V.G., 474 Mass. 315, 323 (2016).[3]  Courts must exercise the authority conferred on them to "encourage the development of maximum self-reliance and independence of the incapacitated person and make appointive and other orders only to the extent necessitated by the incapacitated person's limitations or other conditions warranting the procedure."  G. L. c. 190B, § 5-306 (a).

Even where a guardian is appointed, whether general or limited in scope, the guardian does not have the authority to admit the incapacitated person to a nursing facility[4] against the

---

[3] The Massachusetts Uniform Probate Code Prefatory Note to article V provides, in part, "The call for 'limited guardianship' was a call for more sensitive procedures and for appointments fashioned so that the authority of the protector would intrude only to the degree necessary on the liberties and prerogatives of the protected person.  In short, rather than permitting an all-or-none status, there should be an intermediate status available to the courts through which the protected person will have personal liberties and prerogatives restricted only to the extent necessary under the circumstances. The court should be admonished to look for a least-restrictive protection approach." Article V, Protection of Persons Under Disability and Their Property, Prefatory Note, in The New MUPC Is Here . . . and Now at 227 (Mass. Cont. Legal Educ. 2012).

[4] With certain exceptions not relevant here, G. L. c. 190B, § 5-101 (15) defines a "[n]ursing facility" as "an institution or a distinct part of an institution which is primarily engaged

will of the incapacitated person "except upon a specific finding by the court that such admission is in the incapacitated person's best interest."  G. L. c. 190B, § 5-309 (g).[5] Accordingly, the appointment of a guardian over an incapacitated person is necessary, but not by itself sufficient, to admit an incapacitated person to a nursing facility against his or her will.  Such an admission requires an additional order by the court based on a specific finding that the admission is in the incapacitated person's best interest.

---

in providing to residents:  (i) skilled nursing care and related services for residents who require medical or nursing care; (ii) rehabilitation services for the rehabilitation of injured, disabled or sick persons; or (iii) on a regular basis, health-related care and services to individuals who because of their mental or physical condition require care and services, above the level of room and board, which can be made available to that individual only through institutional facilities that are not primarily a mental health facility or developmentally disabled facility."

[5] We note that, if five conditions are met, G. L. c. 190B, § 5-309 (g) carves out an exception to the requirement that a guardian may admit an incapacitated person to a nursing facility only where a court specifically finds that admission is in the incapacitated person's best interest.  The five conditions are "(1) the admission shall not exceed [sixty] days; (2) any person authorized to sign a medical certificate recommends such admission; (3) neither any interested person nor the incapacitated person objects; (4) on or before such admission, a written notice of intent to admit the incapacitated person to a nursing facility for short term-services has been filed by the guardian in the appointing court and a copy thereof has been served in-hand on the incapacitated person and provided to the nursing facility; and (5) the incapacitated person is represented by counsel or counsel is appointed forthwith."

A Probate and Family Court judge does not have the authority under the code to allow a hospital's request to admit a patient to a skilled nursing facility against the will of the patient where, as here, the judge has not found the patient to be an incapacitated person and, therefore, has not appointed a guardian for that patient.  Indeed, even if the judge here had found D.C. to be an incapacitated person and appointed a guardian for her, the guardian would still lack the legal authority to admit D.C. to a nursing facility against her will unless the judge granted the guardian that specific authority by making a "specific finding" that it was in D.C.'s best interest to be admitted to a nursing facility.

Nor does a Probate and Family Court judge have the authority under the code to appoint a limited guardian over a person for the narrow purpose of admitting that person to a nursing facility where the judge has not found the person to be an incapacitated person.  To be sure, where a person is found to be incapacitated, as defined in G. L. c. 190, § 5-101 (9), and "the principal reason for the guardianship is the [incapacitated person's] inability to comprehend a personal medical problem, the guardian's authority could be limited to making a judgment, after evaluation of all circumstances, concerning the advisability and form of treatment and to authorize actions necessary to carry out the decision."  Guardianship of B.V.G.,

474 Mass. at 322, quoting Uniform Probate Code prior § 5-306 comment, 8 U.L.A. (Part III) 186 (Master ed. 2013).  But that limited authority cannot be granted to a limited guardian without a finding that the person is an incapacitated person and, where the decision is to admit the person against his or her will to a nursing facility, without a specific finding by the court that such admission is in the person's best interest. Therefore, because the judge here made neither finding, the judge erred in allowing the hospital's request to transfer and admit D.C. to a skilled nursing facility.[6]

Thus, we address the questions posed by the judge as follows:

> 1.  A judge of the Probate and Family Court may not order a person to be admitted to a nursing facility against his or her will unless the judge appoints a guardian after finding that the person is an incapacitated person as defined in G. L. c. 190, § 5-101 (9), and then makes a specific finding that admission to a nursing facility is in the incapacitated person's best interest.
>
> 2.  A judge of the Probate and Family Court does not have the authority to appoint a limited guardian over someone who is not an incapacitated person for the sole purpose of admitting that person to a nursing facility.
>
> 3.  A judge of the Probate and Family Court does not have the authority to order someone who is not an incapacitated person to be transferred to a nursing facility.

---

[6] We do not address the legal options available to an acute care hospital where a patient who is not incapacitated fails to leave upon discharge.

Conclusion.  For the reasons given, the hospital's appeal from the judge's order dated November 15, 2016, dismissing its petition to appoint a guardian for D.C., is dismissed as moot, and the subsequent report of the matter dated November 28, 2016, is discharged.  See Dorfman, 386 Mass. at 138 (discharging report that did not comply with G. L. c. 215, § 13).

So ordered.